UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**DEBRA SPERO**, as Natural Mother of
**V.S.**, an infant,
                              Plaintiffs,

                                                           **FIRST AMENDED**
         -against-                                         **COMPLAINT**

                                                           **17-cv-0007(GTS-DEP)**

**VESTAL CENTRAL SCHOOL DISTRICT
BOARD OF EDUATION, VESTAL CENTRAL SCHOOL
DISTRICT, JEFFREY AHEARN**, Superintendent of Schools,
**ALBERT A. PENNA**, Interim Principal Vestal
High School, **DEBORAH CADDICK and CLIFFORD
KASSON**, in their Individual and Official capacities.
                              Defendants.

---

Plaintiff Debra Spero, as the mother of V.S., an infant, for her amended complaint against

Defendants states and alleges as follows:

## PRELIMINARY STATEMENT

1.      V.S. is a seventeen-year-old who is one of the few students of color within the Vestal

Central School District ("District"). In December 2016 V.S. spoke out on social media to address

what he believed to be the racist actions of a teacher and the school administration.  As a result

of exercising his constitutionally protected right to speak out against the District, V.S. received a

suspension of eighteen months.

2.      At the time of his suspension V.S. was only four months from graduation and had been

accepted to college where he intended to pursue a nursing degree.  The District has refused to

provide V.S. with the alternative education that would have enabled him to graduate in June

2017.  Consequently, V.S. will not graduate from high school with his class; his acceptance to

college will be rescinded; and there is no guarantee that he will ever be accepted to another college and receive a college education.

3.      By punishing V.S. for constitutionally protected speech, the Defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

4.      This action seeking to vindicate rights protected by the First and Fourteenth Amendments to the United States Constitution and is brought under 42 U.S.C. § 1983 and 42 U.S.C. § 2000d. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in the Northern District of New York (N.D.N.Y.) pursuant to 28 U.S.C. § 1391(b) as plaintiffs reside in Broome County in the N.D.N.Y.; all of the defendants are located in or employed in Broome County in the N.D.N.Y.; and a substantial part of the events or omissions giving rise to the claim occurred in Broome County in the N.D.N.Y.

## PARTIES

6.      Plaintiff V.S.is a seventeen-year-old person of color who resides in Vestal, New York, within the District. V.S. brings this action through his mother Debra Spero.

7.      Defendant Vestal Central School District Board of Education (the Board) has general control, management, and responsibility of the District and the public schools within that District, including Vestal High School. The Board at all relevant times referenced in this complaint, acted under color of State law within the meaning of 42 U.S.C. § 1983.

8.      Defendant District is the public school district in and for the town of Vestal, New York. The District is a recipient of federal financial assistance and acted under color of State law.

9.     Defendant Jeffrey Ahearn is, and at all times hereafter mentioned was, the District Superintendent.  In that capacity, he must enforce all provisions of law and all rules and regulations relating to the management of the schools, and other educational, social and recreational activities.  At all relevant times referenced in this complaint, Superintendent Ahearn acted under color of State law. Superintendent Ahearn is sued in both his official and individual capacity.

10.     Defendant Albert A. Penna is, and at all times relevant mentioned hereafter was, the Interim Principal at Vestal High School, which is located in the Vestal School District. Defendant Penna has at all times acted under color of state law. He is sued in both his individual and official capacities.

11.     Defendant Deborah Caddick is, and at all relevant times mentioned hereafter was, an Assistant Principal at Vestal High School, which is located in the Vestal School District. Defendant Caddick has at all times hereafter mentioned acted under color of state law. She is sued in both her individual and official capacities.

12.     Defendant Clifford Kasson is, and at all times relevant hereafter mentioned was, an Assistant Principal at Vestal High School in the District. Defendant Kasson is the executive official designated by the Board to handle complaints under the Dignity for All Students Act ("DASA") (N.Y. Ed Law Title I, Article 2) and at all times hereafter described acted under color of state law. He is sued in both his individual and official capacities.

## STATEMENT OF FACTS
### Background

13.     V.S. is a seventeen-year-old student at Vestal High School. At the time of his suspension he was four months away from his June 2017 graduation.

14.     V.S.'s mother is Guyanese and his father is Italian-American. V.S. identifies as a student of color.

15.     Prior to coming to Vestal High School, V.S. had not experienced significant racism. Since his enrollment in Vestal High School, V.S. has been called the "N" word repeatedly by other students and felt on numerous occasions that he has been treated differently because he is not white.

### October 13, 2015 Incident

16.     On October 13, 2015, V.S. was accused of stealing money from another student's book bag in the locker room. V.S. was searched and he did not have the money.  V.S. notified Defendant Caddick that he felt that the students making the accusation targeted him because of the "color of his skin."

17.     V.S. also notified Defendant Caddick that the group of students accusing him of being near the bag with the missing money often called him the "N" word and regularly ridiculed another student for wearing a turban.

18.     Upon information and belief, Defendant Caddick investigated the other students' claims that V.S. had stolen from them but did not investigate VS's allegations of racial and religious harassment.

### Segregated Seating Arrangement

19.     The following school year in September 2016, V.S. was a student in the math class taught by Katherine Dyer.

20.     Fairly early in the semester, Dyer created a seating arrangement that placed all but one of the students of color in the back of the classroom, isolating them from the white students.

21.     V.S., complained to Dyer stating "separate is not equal." Dyer denied that she would ever think about race when creating a seating chart, but changed the seating arrangement.

22.     V.S. reported the segregated seating arrangement to Defendant Kasson, the District DASA coordinator. Upon information and belief, he did not undertake an investigation.

### November 22, 2016 Incident in Math Class

23.     On November 22, 2016, Dyer accused one of the students of color in her fourth period math class of "vaping" or smoking an e-cigarette.

24.     Dyer ordered the accused student to leave the classroom. After he left and as Dyer was re-entering the classroom, V.S. heard her say, "I'm fucking tired of these niggers."

25.     Not believing what he had just heard, V.S. said: "What!" He then told Dyer she was a "fucking racist." Dyer told him to get out of her classroom. She repeated this three times, speaking more loudly each time. V.S. left and walked to the office, escorted by a hallway monitor.

26.     On November 22, 2016, no school official spoke to, questioned, or disciplined V.S. No-one asked for his side of the story or asked why he had called Ms. Dyer a "fucking racist."

27.     At the end of the school day V.S. left and went home for Thanksgiving break.

28.     Upon his return from school, V.S. was placed on "senior probation" as punishment for the November 22, 2016, incident.

### Short Term Suspension on December 2, 2016

29.     On December 2, 2016, Defendant Kasson pulled V.S. from his 3rd period class. V.S. had no idea why he was being pulled from class. Defendant Kasson walked V.S. to his office. During the walk, Defendant Kasson and V.S. had a long conversation about their ancestors and even stopped in front of a map on the school wall where Defendant Kasson asked V.S. where his

ancestors came from. V.S. told him his mother was from Guyana and his father was Italian-American.

30.     As Defendant Kasson and V.S. entered the Assistant Principal's office, Defendant Caddick told V.S. to sit down.  Defendant Caddick stood in front of him and Defendant Kasson stood in front of the door.  Defendant Caddick told V.S. that he was being suspended for "intimidating" Dyer.

31.     During this meeting V.S. called his parents who came to the school to meet with the administrators.

32.     V.S., Defendant Penna, Defendant Kasson, Defendant Caddick, V.S.'s sister, Brittany Spero, and his parents Debra and Robert Spero all met to discuss the suspension.

33.     During the meeting the Speros were told that Dyer alleged that on December 1, 2016, during her fourth period math class, she heard V.S. say her husband's first and middle names. Dyer's husband's first name is Maxwell.  Two students in the class also have that name.

34.     During that same meeting the Speros were told that Dyer also alleged that she heard V.S. say "Drexel," the name of her street, and then heard "someone" say her house number.

35.     Based upon those allegations, V.S. received his first five-day out-of-school suspension.

### Policy and Practice of Students Being Directed Not to Discuss Discipline and V.S.'s Social Media Postings

36.     Upon information and belief, Defendants have a policy and practice of telling students facing disciplinary sanctions not to talk about their suspension or facts underlying the suspension, and to stay off social media when they are facing discipline.

37.     In alleged violation of this policy, V.S. expressed his belief that he had been subjected to racist actions by the District.  In a series of tweets from December 2nd to December 5th, V.S.

expressed his frustration with the District's disregard for the racist treatment of him and other students of color. (A tweet is a statement of up to 140 characters that is available to followers of the person tweeting on that social media platform.)

38.    Believing the racism, he and other students of color were experiencing was a matter of public importance, V.S. directed two tweets to the local news media. The remaining tweets were not directed at any one individual or entity but were simply present on his account.

39.    V.S. Tweet's were as follows:

- "I love being discriminated and prejudiced in the vestal high school system."
- "Crazy how racism will never fade away, we are stuck."
- "How can you allow racism to brew within your staff and discipline the one trying to shine attention to the racism that is going on #truthwillprevail."
- "@WBNG12NEWS suspended from school for calling my teacher a racist after being separated with 4 other students because of our color"
- "@WBNG12NEWS then she reported me after a day for feeling threatened by me after I attempted to report her, and I was told I wasn't going to be acknowledged because I have no say. Vestal High School is corrupt and unfair to its colored students. And we need help."
- "End racism within our schools, how are you supposed to teach the young minds while (yours) is stuck in such an evil way #vestalhighschool"

40.    On December 2, 2016, V.S. tweeted a tweeted a video of a young man doing a magic card trick.

41.    On December 7, 2016, two days after the tweets about Vestal High School and on a day when V.S. did not tweet anything, he posted on an entirely different social media platform, Snapchat, a shorter than 10-second video of his sister, a licensed firearm owner, unloading a new firearm and safely storing it.

42.    V.S. also posted other images on his Snapchat story such as a "snap" of him with his girlfriend in the hospital after she had just recovered from surgery.

7

43.     These images, like all images on Snapchat, disappeared after a short period of time and were only accessible to followers of the poster.  Nothing on V.S.'s Snapchat account made any reference to the allegations of racism, V.S.'s suspension, Vestal Central School District, or any student, teacher or administrator in the Vestal Central School District.

44.     V.S. posted the "snap" of his sister that day because he was excited and proud of her as she had just purchased the firearm and he thought his friends would think she was cool.

45.     On December 8, 2016, while still home on suspension, V.S. was notified by a friend that two girls were trying to get out of school early so they were going to report him for his postings on social media.

46.     That same day, V.S.'s father contacted the school to alert them to the fact that students were spreading rumors about V.S. at school. Instead, Defendant Penna notified V.S.'s father that V.S. was going to be further suspended based upon the social media postings calling the District racist.

47.     On December 8, 2016, upon finding out he was going to be suspended for another five days V.S. tweeted:

- "Me trying to spread awareness to the racism I had to face is nothing wrong. I would never hurt a soul, I just wanted to help. I love everyone."
- "We are all equal, because of the pigmentation of my skin means I'm a danger to the school? You are racist, face it you are a horrible being"
- "[Defamation]of character is a crime, because of my skin color you are gonna say I'm going to kill people that's outrageous, you are a racist."

**School Investigation and Manufactured Disruption**

48.     Also on December 8, 2016, two female Caucasian students (in concert with one another) who had preserved the snapchat video on a phone, alerted one of the girls' fathers of the postings and the Snapchat video.

49.     One of the students' parents, a New York State Trooper, contacted School Resource

Officer ("SRO") Conor Talbot to alert him of what his daughter saw on Twitter and Snapchat.

50.     Upon being alerted of the tweets and video, SRO Talbot provided them to all of the

Defendants.

51.     Upon information and belief, after reviewing the tweets and video and speaking to a

couple of students, Defendants were aware almost immediately that the video was of V.S.'s adult

sister and not a District student.

52.     SRO Talbot also contacted V.S.'s parents and told them he was coming to talk with V.S.

at their home.

53.     SRO Talbot went to the Spero home to inquire about the tweets and video. The Speros

were cooperative. The school resource officer found that V.S.'s sister had a valid permit and that

the firearm was securely locked in a finger print case.  According to the school resource officer,

there was nothing criminal about the video or V.S.'s sister's possession of her legally acquired

licensed firearm.

54.     As a result of the investigation, no charges were pressed against V.S. and the school was

notified that V.S. posed no threat to the school.

55.     Instead of discontinuing their investigation after determining V.S. was no threat to the

school, at the instruction of Defendant Ahearn, Defendant's Caddick and Kasson continued their

investigation by conducting more interviews of students in Dyer's class.

56.     The students were called into a room with the attorney for the school district, the

principal and assistant principals and placed in a seat between them.  The students were then

asked to answer a list of questions.

57.     In response to the District's written questions, many of the students said they had not

seen any postings on social media, but multiple students identified, that at one point the students

of color were all seated by Dyer in the back corner of the classroom together.

58.     Upon information and belief, all Defendants were present during these interviews and

reviewed these interview responses during their investigation and were aware that multiple

students corroborated V. S's claim of segregated seating.

59.     It was also during those interviews that the Defendants were told that V.S. had told

another student that his suspension was "unfair."

60.     Despite having conducted an investigation, learned that V.S. wasn't the only student in

class who noticed a segregated seating arrangement, been informed that there was no threat and

the firearm was legal and licensed and belonged to V.S.'s adult sister, the District decided to

cancel a yet-to-be announced, surprise "lockdown drill" that was allegedly planned for

December 9, 2016.

61.     Upon information and belief, as the "lockdown drill" was supposed to be a surprise,

almost no one knew that the "lockdown drill" had been scheduled and therefore almost no one

knew it had been cancelled causing inconvenience to no one.

62.     Classes and regularly scheduled school, afterschool and extracurricular activities

continued unimpeded on December 8th and 9th, 2016 with no disruption.

**Long-Term Suspension for Social Media Posts**

63.     On December 8, 2016, Defendant Kasson also called V.S. and told him that he was

suspended for an additional five days based on the postings he had made on social media.  His

suspension would begin on December 9th and run for five school days.

64.     Students of color in the Vestal School District are five times more likely to receive suspension as a punishment than their white counterparts.

65.     Defendants Ahearn, Penna, Caddick and Kasson were so angered by V.S.'s postings that they didn't feel the two five-day suspensions V.S. had already been given were sufficient to discipline him for calling their district racist and his claim that his discipline was "unfair."

66.     Defendants were angry that a student would accuse them of racism and publicize it to the media.  Their decision to further discipline V.S. was made on the same day they viewed the postings and before completing a full investigation of V.S.'s allegations.

67.     In order to effectuate a suspension of longer than five days, the District was required to hold a Superintendent's hearing under Section 3214 of the New York Education Law.

68.     Although the decision to suspend V.S. was made immediately after reading the postings on December 8, 2016, it wasn't until December 12, 2016, that Defendant Penna notified the Spero family by telephone that due to V.S.'s, "acts on December 8th; postings on social media", the District was going to hold a Superintendent's hearing to determine what further discipline was warranted.

69.     None of the social media postings were lewd, contained "true threats" or obscenity, as those terms are defined in the law.

70.     V.S.' social media posts through Twitter and Snapchat are constitutionally protected speech.

71.     Upon information and belief, on December 8, 2016, a strategy meeting was held that involved the Defendants, a party identified by only his/her initials, and the School District's attorney Wendy Dewind.

72.     Upon information and belief, during that meeting, the parties agreed that there was nothing in the posts that was threatening or violent.

73.     Also upon information and belief during that meeting it was discussed that V.S.'s speech was protected speech and that there would need to be a substantial disruption in order to discipline him.

74.     Under no reasonable viewing of V.S.'s social media activities could they be deemed to pose a foreseeable risk to cause a substantial disruption of school discipline, education or activities.

75.     Despite realizing that V.S.'s social media posts were innocuous and despite the importance of these activities to public discourse, defendants did not withdraw the second suspension or change their decision to hold a hearing which would enable them to impose further punishment upon V.S.

76.     Instead, the District continued to make a disruption at the school by seeking out every avenue possible to discredit V.S. and his opinion that the District was racist.

### Notice of Suspension and Superintendent's Hearing

77.     On December 14, 2016, V.S. was served with the Notice of Superintendent's Hearing.

78.     The notice, based upon his social media postings (that he had already been disciplined for) charged V.S. with being "insubordinate or disorderly or engaged in conduct which endangered the safety, morals, health or welfare of others or some or all of the above."

79.     Specifically, Respondent's notice alleged that V.S. engaged in the following conduct:

    a)   "On December 2, 2016, you were involved in an incident in Math class. At the time, you were instructed not to discuss the incident. Several students came to

speak with administrators regarding the incident because you shared with those students that you were being suspended for 'no reason' and 'it was unfair.'"

b)   "On December 8, 2016, you posted a number of posts on social media which were retaliatory in nature against the teacher and the administration."

80.    The December 14, 2016, notice further alleged that, "As a result of your social media activities, the District was contacted by the New York State Police with concerns about the safety of District Students. The School Resource Officer and the High School Administration received concerns from parents and students about the safety of students at Vestal High School as a result of your social media posts. As a result of your social media activities and the fear your posts created in the student body, a State required emergency response lockdown drill had to be cancelled for December 9, 2016."

81.    A Superintendent's Hearing was scheduled and was held over the course of five days between December 20, 2016, to January 31, 2017.

82.    On the first and second days of the hearing, V.S. was represented by attorney Ron Benjamin. The first day of hearing, December 20, 2016, consisted largely of oral argument between District's counsel and Mr. Benjamin concerning whether the hearing would be open or closed and whether the hearing officer had the authority to hear and rule on a motion to dismiss. One witness for the District testified that day. The attorneys were instructed to provide written briefs on the legal issues prior to the next hearing date.

83.    The second day of hearing, January 17, 2017, the attorneys argued the motion to dismiss. No witnesses were presented.

84.    Because both counsel agreed that a lengthy adjournment was necessary to brief the issues, V.S. returned to the high school after the holiday break on January 13, 2017.  V.S.

attended school, without incident, until the Superintendent's decision was issued more than a month later.

85.     At the third scheduled hearing date, January 25, 2017, Mr. Spero reported to the hearing officer and District's counsel, Wendy DeWind, that the family's attorney, Ron Benjamin, had notified them the prior evening that he would no longer represent V.S.

86.     Mr. Spero requested an adjournment of the hearing so that he could seek new counsel. The hearing officer denied Mr. Spero's request.

87.     The hearing continued on that date with the District presenting a number of witnesses. Mr. Spero repeated his request for an adjournment to obtain counsel several times on that date and on January 31, 2017.  These requests were also denied.

88.     At one point, Mr. Spero informed the hearing officer and Ms. DeWind that an attorney from Legal Services of Central New York's Binghamton office would review the case if they could obtain a one-week adjournment.  Ms. DeWind responded incorrectly that to her knowledge "legal aid" (sic) does not typically accept suspension cases. The hearing officer once again denied the request.

89.     On the final day of hearing, the Spero family introduced into evidence Instagram photos of white District students posing with many different types of guns and firearms. Instagram is a mobile photo-sharing application, similar to Snapchat except that the images do not disappear. Some of the students were posing with assault rifles, and in one Instagram post a student holding a weapon wore a ski mask and another had a bandana covering part of his face.

90.     The hearing officer issued his recommendations by letter dated February 3, 2017. V.S. was found guilty of the charged conduct. The hearing officer found that V.S.'s postings on Twitter complaining about racism in the District and the Snapchat video of his sister were

disruptive to the school and caused the cancellation of an unannounced lock-down drill. In addition, V.S. was found guilty of failing to comply with the directives of a school official when he said his punishment was "unfair" and engaging in conduct that was violent, defamatory, harassing, intimidating and disruptive to the school community. The recommended punishment was suspension for the remainder of the 2016-2017 school year and the entire 2017-2018 school year.

### Superintendent's Decision and Subsequent Appeals

91.     On February 4, 2017, Defendant Superintendent Ahearn issued a Notice of Decision affirming the hearing officer's findings and recommendation for a suspension that included the remainder of the 2016-2017 school year and all of the following 2017-2018 school year.

92.     Represented by Legal Services of Central New York, plaintiffs appealed V.S.'s suspension to the District's Board on February 23, 2017.

93.     On March 18, 2017, V.S. received the decision of the Board upholding the suspension and the punishment.

94.     Within the Vestal Central School District, the board of education is the final decision maker on whether to uphold, dismiss or modify a suspension.

95.     This decision was appealed to the Commissioner of Education by Legal Services of Central New York. The District was personally served with the Notice of Petition and Petition on March 22, 2018.

96.     The appeal to the Commissioner, if a stay is not granted, will likely not be decided until after V.S. has served the entirety of his disproportionately long suspension, making it futile to stop the harm V.S. is currently experiencing.

**V.S. Has and Will Continue to Suffer from Irreparable Harm**

97.     Defendants' sanctions against V.S. have already resulted in profound consequences.  V.S. was only four months from graduation when this suspension began and now will not be able to graduate with his class.  In fact, because the District has refused to provide him alternative education he will not be able to receive his diploma until the 2018-2019 school year when he is 20 years old.

98.     V.S. will not be able to attend the community college program that accepted him because he has been denied the opportunity to complete his high school diploma at Vestal High School and that acceptance will be rescinded if he does not attend in the fall.

99.     V.S. will be without education for approximately five hundred and forty days before he will be allowed to return to high school and attempt at taking and passing the regents courses he is currently enrolled in.

100.     V.S. is depressed, despondent and has had suicidal ideation related to this incident and as a result his mother has enrolled him in mental health counseling.

101.     Defendants' punishment of V.S. for tweeting his belief the school district and its teachers are racist and on an entirely different day Snapchatting a picture of his sister securing her personal licensed firearm is retaliation for constitutionally protected activity.

102.     Defendants' insistence on punishing V.S. in a way that affects his education, academic standing, and opportunities to gain admission to post-high school programs is not only excessive and unlawful; it is willful, wanton, and malicious, and causes V.S. extreme and irreparable injury.

103.     Defendants' actions are producing ongoing irreparable harm for which there is no adequate remedy at law.

## CAUSES OF ACTION

### First Cause of Action

1.      Defendants' punishment of V.S. for his social media activities violates his rights under the First Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C § 1983.

2.      V.S. was engaged in speech protected by his First Amendment rights on December 2nd through 8th, 2016.

3.      V.S.'s posts on social media were the sole reason and motivation behind the discipline imposed by the Defendants.

4.      V.S. has suffered extreme and irreparable injury as a result of the Defendants retaliation against him for exercising his First Amendment Right to speech.

### Second Cause of Action

5.      Defendants' excessive punishment of V.S. for constitutionally protected speech violates his rights under the Fourteenth Amendment of the United States Constitution.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that this Court provide the following relief:

a) Declare that Defendants' disciplinary action against V.S. violated his rights under the First and Fourteenth Amendment;

b) Declare that Defendants' retaliated against V.S. for exercising his rights under the First Amendment.

c) Enjoin Defendants from continuing any punishment or sanction against V.S. on account of his constitutionally protected speech, including:

    a.  Reinstating V.S. to the classes at Vestal High School immediately;

    b.  Provide V.S. with compensatory education services for the time he has missed at school;

    c.  Reinstating to V.S. all privileges to which he was and may be entitled as if no disciplinary infraction had occurred; and

    d.  Expunging all references to the incident(s) in question from V.S.'s school records.

d)  Award all reasonable compensatory damages in favor of the plaintiffs and against the defendants in an amount to be determined at trial;

e)  Award punitive damages against Defendant Ahearn, Defendant Kasson and Caddick.

f)  Award Plaintiff's costs and attorney's fees pursuant to 42 U.S.C. §1988

g)  Grant such other relief as this Court deems appropriate.


Dated: April 18, 2017
Oneonta, New York


Respectfully submitted,

Willa S. Payne, Esq. (Bar No: 517751)
Susan M. Young, Esq. (Bar No: 102862)
Joshua Cotter, Esq.  (Bar No:518217)
LEGAL SERVICES OF CENTRAL NEW YORK
189 Main Street, Suite 301
Oneonta, NY 13820
Tel: (607) 766-8118
Fax: (607) 386-4176
wpayne@lscny.org
*Attorneys for Plaintiffs*