UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DEBRA SPERO, as Natural Mother of
V.S., an infant

                Plaintiffs,

v.

VESTAL CENTRAL SCHOOL DISTRICT,      Civil Action No.: 3:17-cv-00007
JEFFREY AHEARN, Superintendent of Schools,
ALBERT A. PENNA, Interim Principal of
Vestal High School, DEBORAH CADDICK,
CLIFFORD KASSON AND KATHERINE DYER,
in their Individual Capacities,

                Defendants,

---

# DEFENDANTS' MEMORANDUM OF LAW
# IN OPPOSITION TO PLAINTIFFS' MOTION FOR
# A PRELIMINARY INJUNCTION

---

DATED: May 15, 2017

SUBMITTED BY:
THE LAW FIRM OF FRANK W. MILLER

CHRISTOPHER M. MILITELLO
    Bar Roll No: 515016
FRANK W. MILLER
    Bar Roll No. 102203
CHARLES C. SPAGNOLI
    Bar Roll No. 507694
*Attorneys for Defendants*
6575 Kirkville Road
East Syracuse, N.Y. 13057
Telephone:  (315) 234-9900
Facsimile:   (315) 234-9908

**TABLE OF CONTENTS**

INTRODUCTION AND PROCEDURAL HISTORY ...................................................... 1

PERTINENT FACTUAL BACKGROUND AND ALLEGATIONS ................................ 2

ARGUMENT ................................................................................................................... 3

STANDARD OF REVIEW – PRELIMINARY INJUNCTION ........................................ 3

POINT I
V.S. WILL NOT SUFFER IEERPARABLE HARM IF HIS REQUEST FOR A
PRELIMINARY INJUNCTION IS DENIED ...................................................................... 4

POINT II
PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON EITHER OF THE CLAIMS SET
FORTH IN THEIR AMENDED COMPLAINT ................................................................... 9

POINT III
THE BALANCING OF HARDSHIPS FAVORS DEFENDANTS .................................. 14

POINT IV
PLAINTIFFS DECLARATIONS SHOULD BE DISREGARDED TO THE EXTENT THAT
THEY ATTEMPT TO SUPPLY CONTEXT AND RATIONALES CONCERNING V.S.'S
ALLEGED SPEECH ........................................................................................................ 14

CONCLUSION ................................................................................................................ 16

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Debra Spero, on behalf of her infant son, V.S., commenced the within action by the filing of a Complaint in New York State Supreme Court, Broome County, on December 21, 2016. Defendants removed the Complaint to this Court on January 3, 2017. After Plaintiffs changed counsel, the parties stipulated to allow Plaintiffs to file an Amended Complaint on April 27, 2017. (Dkt. 23). The Amended Complaint asserts two claims against all Defendants, both arising under 42 U.S.C. §1983: (1) Retaliation for speech protected by the First Amendment of the U.S. Constitution; and (2) Violation of V.S.'s substantive due process rights. Defendants' have not yet filed an Answer to the Amended Complaint, as the deadline to do so for all Defendants except the Board of Education of Vestal Central School District is December 18, 2017.

On May 8, 2017, Plaintiffs filed the instant motion seeking a Temporary Restraining Order and a Preliminary Injunction related to V.S.'s suspension from Vestal Central School District's High School. (Dkt. No. 29). Plaintiffs requested the temporary relief of immediately returning V.S. to school attendance pending the outcome of their motion for a Preliminary Injunction, which request was denied by Decision and Order dated May 9, 2017.

Defendants now submit this Memorandum of Law, and several affidavits, in opposition to Plaintiffs' Motion for a Preliminary Injunction. In analyzing Plaintiffs' motion for a Preliminary Injunction, it is noted that their motion papers do not include or reference their Amended Complaint. However, as Plaintiffs' Memorandum of Law appears to argue the merits of the same substantive claims as are set forth in the Amended Complaint, those are the claims that are addressed herein.

1

As set forth in detail below, Plaintiffs' motion should be denied, as they can neither show that they will suffer irreparable harm if their request is not granted, nor that they have a likelihood of success on the merits of their claims.

## FACTUAL BACKGROUND AND ALLEGATIONS

Plaintiffs seek to challenge the determination of Defendant Jeffrey Ahearn, the Superintendent of Schools of Defendant Vestal Central School District, to suspend Plaintiff V.S. out of school until June 30, 2018 for various acts of misconduct of which he was found guilty after a hearing held pursuant to New York Education Law §3214. (Plaintiffs' Exhibit "T"). Plaintiffs' appeal to Defendant Board of Education was denied on April 11, 2017. (Affidavit of Wendy K. Dewind, ¶35). Plaintiffs thereafter commenced an appeal to the New York State Commissioner of Education, which appeal included a request for a stay of the suspension pending the outcome of the appeal. Plaintiffs' request for temporary injunctive relief was denied by the Commissioner of Education. (Dewind Affidavit, ¶34; Plaintiffs' Exhibit "W"). Plaintiffs dispute the findings that V.S. was guilty of misconduct as well as the rationale set forth in the decision to impose the suspension upon him.

Defendants' version of the facts that underlie the decision to pursue discipline against V.S. based upon a course of conduct spanning from November 22, 2016 through December 9, 2016, is set forth in the Affidavits of Superintendent Ahearn, Assistant Principal Deborah Caddick and teacher Katharine Dyer, which are attached with this memorandum in opposition to Plaintiffs' motion.

## ARGUMENT

## STANDARD OF REVIEW – PRELIMINARY INJUNCTION

A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. Doninger v. Niehoff, 527 F.3d. 41, 48 (2d. Cir. 2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." V.W. v. Conway, 2017 U.S. Dist. LEXIS 24395, p. 44 (N.D.N.Y.); quoting Gen. Mills, Inc. v. Chobani, LLC, 158 F. Supp. 3d 106, 114 (N.D.N.Y. 2016).

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the *status quo* pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the *status quo* by commanding some positive act. (T)his distinction is important because we have held that a mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief'. Tom Doherty Assocs. V. Saban Entertainment, 60 F.3d 27, 34 (2d. Cir. 1995) (internal citations omitted).

"When the movant seeks a 'mandatory" injunction -- that is, as in this case, an injunction that will alter rather than maintain the *status quo* -- she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits. Doninger, supra at 49. This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body such as a school district. Cave v. East Meadow Union Free Sch. Dist., 480 F.Supp.2d. 610, 632 (E.D.N.Y. 2005).

3

Plaintiffs' present request seeks to upset the *status quo* by overturning V.S.'s out of school suspension and ordering the District to immediately reinstate V.S. to attendance at Vestal High School. Additionally, as detailed in the Affidavits of Jeffrey Ahearn and Katharine Dyer, returning V.S. to attendance at Vestal High School would have serious consequences for Defendants that would require them to change the staffing of at least one class in which V.S. is enrolled. (Ahearn Affidavit, ¶¶62-68; Dyer Affidavit ¶21).

Since the relief requested by Plaintiffs is mandatory, sought against a government body, and would require Defendants' to change their practices with respect to the classes attended by V.S., they must satisfy the heightened standard of "a clear or substantial likelihood of success on the merits" in order to prevail. See, J.G. v. Mills, 2006 U.S. Dist. LEXIS 101621, p. 20-21 (E.D.N.Y. 2006) (holding that request to, *inter alia*, "(p)romptly (enroll) all youth in appropriate school placements" would require a change to Defendants' practices and was thus "mandatory" relief).

## POINT I

### V.S. WILL NOT SUFFER IEERPARABLE HARM IF HIS REQUEST FOR A PRELIMINARY INJUNCTION IS DENIED

Plaintiffs have failed to establish that a preliminary injunction would avoid irreparable harm to V.S. for two reasons: (1) because V.S. was unlikely to graduate from high school through traditional school programs in June of 2017 even if he had never been suspended; and (2) V.S. has options available to him for pursuing his diploma regardless of whether Plaintiffs' motion is granted.

As Plaintiffs concede, to obtain a preliminary injunction they must demonstrate, inter alia, irreparable harm – that is, "*'certain and imminent harm* for which a monetary award does not adequately compensate'" – will occur absent a preliminary injunction. (Plaintiffs'

4

Memorandum p. 10 (emphasis added).) The Plaintiffs' showing "'must demonstrate that *absent a preliminary injunction* they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *(Id.* (emphasis added).)

In their attempt to furnish such a showing, Plaintiffs essentially argue that in any case concerning alleged First Amendment violations, irreparable injury is presumed. The Second Circuit, however, has expressly stated no such presumption exists:

> [The district court's] finding [of irreparable injury] appears to be based on a presumption that the infringement of a First Amendment right necessarily is irreparable. But, "we have not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights." Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349 (2d Cir. 2003). "Where a plaintiff alleges injury from a rule or regulation that *directly* limits speech, the irreparable nature of the harm may be presumed." Bronx Household, supra. (emphasis added). But where "a plaintiff alleges injury from [an action] that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of [First Amendment] rights." Bronx Household, supra at 350; see, e.g., Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir. 1999) ("Although we acknowledge that [the NYPD's requirements] . . . *may* make some officers more reluctant to speak . . . , this kind of conjectural chill is not sufficient to establish real and imminent irreparable harm.").

Mullins v. City of New York, 307 Fed.Appx. 585, 587 (2d Cir. 2009) (summary order).

Consistent with this statement of the Second Circuit's approach, the cases cited by Plaintiffs in favor of the supposed "presumption" of irreparable injury involved ongoing "prior restraints" on speech or continuing coercion of speech, not discrete acts of retaliation for past speech. Thus, for example, Elrod v. Burns, 427 U.S. 347 (1976), concerned a political patronage "spoils" system whereby government employees were required to obtain support from and

5

pledge affiliation with the political party of the victor in an election, in order to avoid termination of employment. The Supreme Court found that irreparable injury, in the form of threatening or impairment of First Amendment freedoms, was present, based not on the individuals who had *already been discharged* (i.e., as to whom the alleged retaliation and coercion was already complete), but because "one of the respondents was only *threatened* with discharge . . . [and in] addition, many of the members of the class . . . were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge." Elrod, supra at 373 (emphasis added).

Similarly, the other case cited by Plaintiffs in this connection, Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996), challenged the application of standing licensing regulations to the display and sale of artwork in public spaces in New York City. Again, the case involved an ongoing pattern of enforcement of regulations to purported First Amendment speech, and did not concern an already "complete" discrete act of alleged retaliation. Bery, supra at 691-692.

Thus, Plaintiffs cannot rely on the simple fact that they have raised allegations of First Amendment retaliation to establish, *per se*, the "irreparable harm" prong of their showing of entitlement to injunctive relief. They must demonstrate that *in this particular case*, irreparable harm will occur absent the preliminary injunction – and, as their own memorandum of law suggests, they must show the preliminary injunction will avoid the harm in question. They cannot make such a showing.

Although Plaintiffs contend that V.S. will suffer irreparable harm by being deprived of the opportunity to graduate in June of 2017, and then enroll in college starting in Fall, 2017, Defendants have submitted evidence showing that, in fact, he was unlikely to graduate in June regardless of his suspension. As the Affidavit of Deborah Caddick shows, V.S.'s graduation

6

depended upon him completing and passing all of his courses, and at the time of his suspension he was failing physical education due to poor attendance and inadequate preparation unrelated to the suspension. (See Caddick Affidavit, ¶¶7,8). The Caddick Affidavit further shows that V.S. was in danger of failing several other classes as well. (See Caddick Affidavit, ¶¶10,11). Requiring the District to lift his suspension and restore V.S. as an active student, as Plaintiffs demand, would not rectify these problems. In fact, even if he had never been suspended in the first place, these issues likely would have prevented V.S. from graduating on time anyway. The implied allegation - that if V.S. fails to graduate with his class, his suspension would be the sole cause of that failure and the attendant failure to begin college in the Fall - is wholly speculative and, indeed, contrary to any realistic evaluation of the facts. Because the alleged harm does not flow from the alleged First Amendment retaliation, but was inherent in the circumstances predating the alleged retaliation, Plaintiffs cannot show the injunctive relief they seek would cure the harm. As such, the "irreparable harm" showing cannot be made for purposes of the injunctive relief proposed by Plaintiffs, and no preliminary injunction should issue.

To the extent that Plaintiffs suggest V.S. may suffer irreparable harm simply by being "denied" educational instruction during the period of his suspension, they cannot show the harm is irreparable by monetary damages. They have failed to allege that they are unable to provide V.S. with home instruction or tutoring at home at their own expense. Moreover, Plaintiffs offer no evidence that V.S. cannot pursue a TASC diploma to satisfy the college requirement of completing high school. As detailed in both the Caddick and Ahearn Affidavits, Plaintiffs efforts to pursue such options have been cursory at best, and certainly do not show that V.S. lacks this option moving forward. (Caddick Affidavit, ¶¶23-26; Ahearn Affidavit ¶¶34-53). Because such options would substitute for educational instruction through regular school attendance, pursuing

7

such alternative methods of obtaining a diploma – subject to later monetary reimbursement if they prevailed on their claims – would avoid the purported harm to V.S.'s educational development.

Plaintiffs also argue that the length of V.S.'s suspension, by itself, establishes that he will suffer irreparable harm in the absence of an injunction. In support of this argument, Plaintiffs rely upon the cases of V.W. v. Conway, 2017 U.S. Dist. LEXIS 24395 (N.D.N.Y. 2017) and N.J. v. New York, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011). This argument fails, since the cited cases do not, in fact, support such an argument. N.J. involved homeless students asserting violations of the federal McKinney-Vento Act, which provides a statutory guarantee of free public education to homeless children. The Eastern District found that requiring the students to change schools once (as here) "may not rise to the level of irreparable harm," and it was only the prospect of the students having to change schools *twice in a short time* that constituted sufficient prospect of irreparable harm to justify an injunction in that case.

In V.W., the plaintiffs were juveniles detained at the Onondaga County Justice Center and who, while detained, were placed in solitary confinement without any opportunity to continue their educations during such confinement. Here, of course, V.S. may be afforded home instruction or hire a tutor as an alternative form of education during his suspension, or may be placed in a private school (notwithstanding his mother's conclusory assertion that no private school will admit him). Accordingly, V.W. is wholly distinguishable, and offers no support for Plaintiffs' blanket assertion that the deprivation of educational opportunities, without more, establishes that he is and will continue to suffer irreparable harm if his suspension from school is not immediately enjoined.

8

It is finally worth noting, as the Court did in its May 9, 2017 order denying Plaintiffs' request for a temporary restraining order (Dkt. No. 35), that the delay of fifty-one days from unsuccessfully appealing V.S.'s suspension to the Board, forty-nine days from appearing in this action, and seventeen days from receipt of the Commissioner of Education's denial of their request for a stay, significantly undermines Plaintiffs' argument that further time on suspension will cause V.S. "irreparable harm."

Therefore, Plaintiffs cannot show irreparable harm in support of the injunctive relief they request, and it is respectfully submitted that the request should be denied.

## POINT II

## PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON EITHER OF THE CLAIMS SET FORTH IN THEIR AMENDED COMPLAINT

Plaintiffs' motion presents two claims for analysis, both arising under 42 U.S.C. §1983: (1) Retaliation for speech protected by the First Amendment of the U.S. Constitution; and (2) Violation of V.S.'s substantive due process rights.  Because Plaintiffs are unlikely to succeed on the merits of either claim, the motion must be denied.

*First Amendment Claim*

The majority of Plaintiffs' Memorandum of Law argues the merits of their claim that "(b)y harshly disciplining V.S. for his constitutionally-protected posts, the District shut down V.S.'s speech and violated his first amendment rights. This punishment for exercising his First Amendment rights is an irreparable injury." (Plaintiffs' MOL, Dkt. 29-3, p. 15).

Discussion of Plaintiffs' claim must start with the well-settled principle that, while students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate", Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 509 (1969); "school administrators may prohibit student expression that will 'materially and

9

substantially disrupt the work and discipline of the school'." Doninger, supra at 48; quoting Tinker, supra at 513.

"The question is not whether there has been actual disruption, but whether school officials 'might reasonably portend disruption' from the student expression at issue. Defabio v. Easthampton Union Free Sch. Dist., 623 F.3d. 71, 79 (2d. Cir. 2010). "The test is an objective one, focusing on the reasonableness of the school administration's response, not on the intent of the student." Cuff v. Valley Central Sch. Dist., 677 F.3d. 109, 113 (2d. Cir. 2012). With respect to off-campus speech, "the Second Circuit has determined that a student may be disciplined for off-campus speech that is reasonably understood as urging or favoring violent conduct where (1) there was a reasonably foreseeable risk that the speech would come to the attention of school officials, and (2) there was a reasonably foreseeable risk that it would materially and substantially disrupt the work and discipline of the school." Bradford v. Norwich Cent. Sch. Dist., 54 F.Supp.3d. 177, 184 (N.D.N.Y. 2014).

Cuff is particularly applicable to the present matter. There, much like Plaintiffs here, the plaintiff relied heavily on an argument that his conduct could not have been reasonably perceived as disruptive to school operations. Cuff, supra at 113-14. The Court rejected this argument, noting that "(c)ourts have allowed wide leeway to school administrators disciplining students for writings or other conduct threatening violence". Cuff, supra at 114 (citing to cases from other federal circuit courts that recognized the threat of school shootings and attacks requires a heightened awareness by school administrators).

Here, Plaintiffs disingenuous suggestion that V.S.'s conduct and speech raised no legitimate reason for the District's administrators to fear violence is simply an attempt to second guess the judgment of District administrators that must be rejected. As clearly established by

10

Superintendent Ahearn's affidavit, V.S.'s snapchat video of the handgun, particularly when posted in close proximity to his aggressive Twitter posts, caused students and parents alike within the District to reasonably perceive a risk that V.S. had violent intentions. (Ahearn Affidavit, ¶¶8-13). Whether V.S. intended this image to communicate a threat of violence or not is irrelevant in the decision of school administrators to act on what they reasonably perceived to be a possible threat. See, Cuff, supra, citing Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist., 434 F.3d. 34, 40 (2d. Cir. 2007).

Plaintiffs' conclusory allegation that the District's decision to cancel a state-mandated emergency lockdown drill as a result of the climate of fear V.S.'s postings created also fails to establish a likelihood of Plaintiffs' success. Superintendent Ahearn reasonably explains that he and his administrators perceived, based upon several inquiries from parents and student (including the unprompted report of State Police Captain Erik Dauber) a climate of uncertainty and fear about V.S.'s intentions in the wake of the gun video. (Ahearn Affidavit, ¶12). While Plaintiffs rely on a claim that the District's school resource officer "visited V.S.'s home and determined that there was no threat posed" before the lockdown drill was canceled, Plaintiffs fail to account for the fact that SRO Talbut's determination did nothing to lessen the perception in the community that a threat existed. (Ahearn Affidavit, ¶¶11,12).

Additionally, Plaintiffs' claim that "(n)o reasonable viewing of V.S.'s 'snap' would produce the impression that it urged or favored violent conduct" completely disregards that the posting was made in the wake of several previous posts by V.S. that aggressively challenged the actions of District faculty and administrators. Plaintiffs argument further ignores that District administrators did not "manufacture" the calls/inquiries from students and parents seeking reassurance that the District was prepared for what they viewed as a real possibility of violence.

11

(Ahearn Affidavit, ¶9). The concern that V.S.'s post caused in members of the community over his intentions was real, and created a substantial disruption of District activities.

Similarly, in Bradford, this Court was "unable to find a genuine dispute of material fact regarding whether there was a reasonably foreseeable risk that (a threatening text message sent off campus between two students) would materially and substantially disrupt the work and discipline of the school". Bradford, supra at 186. Here, V.S.'s repeated postings to Twitter asserting false allegations of racism were directed at the District's administration itself. Even if the Court is inclined to find, at this early stage of the case, that the parties' differing views on the veracity of V.S.'s claims of racism are an issue of fact, such a dispute surely requires the denial of a preliminary injunction that would, in essence, excuse V.S.'s conduct and place him back into school despite the factual findings of the hearing officer and review by the Commissioner of Education. Such a dispute leaves Plaintiffs well short of establishing a "substantial" likelihood of success on the merits of their claim.

Moreover, Plaintiffs' characterization of V.S.'s Twitter posts as having a "goal . . . to change the racist treatment of students of color at the high school" and "to engage the public in debate . . . on the issue of racism in the District" must be rejected as more revisionist history. (Plaintiffs' Memorandum of Law, Dkt. 29-3, p. 23). This self-serving description of claims that the District had investigated and determined to be unfounded fails to show that the judgment of District administrators that V.S.'s very aggressive, accusatory statements were likely to cause a disruption in school operations was "unreasonable". See, Bradford, supra.

*Substantive Due Process*

Plaintiffs also argue that their claim that V.S.'s suspension denies his right to substantive due process. "Substantive due process has been characterized as imposing limits on what a state

may do regardless of what procedural protection is provided. It is well settled that plaintiffs may only allege cognizable substantive due process claims for extreme or egregious conduct which can be fairly viewed as so 'brutal' and 'offensive to human dignity' that it shocks the conscience". Cohn v. New Paltz Cent. Sch. Dist., 363 F.Supp.2d. 421, 434 (N.D.N.Y. 2006). "A school administration's decision to suspend a student will provide a basis for a substantive due process claim only in the very 'rare case' when there is 'no rational relationship between the punishment and the offense'." Defabio v. Easthampton Union Free Sch. Dist., supra at 486.

Here, "(p)laintiffs have presented no evidence that Defendants' actions were arbitrary, irrational or motivated by bad faith. Difabio, supra. Plaintiffs argument on this claim relies entirely on their subjective view of the length of V.S.'s suspension from school. Notably, Plaintiffs offer no evidence that would support an inference of bad faith or arbitrariness in the decision to suspend him. In fact, the record shows the opposite – V.S. was afforded a full and fair opportunity to be heard before the suspension was imposed, and the suspension was based upon the evidence introduced at the hearing. (Ahearn Affidavit, ¶20).

More importantly, the Affidavits of both Superintendent Ahearn and Assistant Principal Caddick establish that the V.S.'s suspension had a very rational relationship to his conduct. The suspension reflected the conduct of a student who, after several years' worth of disciplinary reports of intimidating and harassing other students and serial incidents of insubordination to faculty and administrators, sought to intimidate District administrators and faculty by leveling baseless charges of racism and subtle suggestions that he was capable of violence. Plaintiffs' inability or unwillingness to perceive the threat that such conduct presents to the District and the orderly operation of its high school does not create a "substantial" likelihood of success on the merits of this claim.

13

## POINT III

### THE BALANCING OF HARDSHIPS FAVORS DEFENDANTS

Plaintiffs also argue that "(t) the District faces no hardship if an injunction is issued and V.S. is allowed to return to school". (Plaintiffs' Memorandum of Law, Dkt. 29-3, p. 24). Defendants vigorously dispute this assertion through the Affidavits of Superintendent Ahearn, Assistant Principal Caddick and teacher Katharine Dyer. All three District employees attest, at length, to the very substantial disruption that V.S.'s return to school would cause. Superintendent Ahearn and Mrs. Dyer both recognize that Mrs. Dyer has already had to be removed from her classroom to avoid exposing her to further baseless allegations by V.S. (Ahearn Affidavit, ¶62-66; Dyer Affidavit, ¶¶15,16,20). Superintendent Ahearn further notes the deleterious effect V.S.'s return would have on the deterrent effect his suspension is intended to have on similarly disruptive, insubordinate students. (Ahearn Affidavit, ¶67). The possibility that V.S.'s return to the classroom without serving his suspension would send a message that V.S. had "beaten the system" further undermines the argument that the District would suffer no harm from a grant of Plaintiffs' motion. (Ahearn Affidavit, ¶67).

Finally, as the Court noted in its Decision and Order dated May 9, 2017, there is "public interest in preventing disturbances in its schools in cases in which due process appears to have been afforded". (Dkt. 35, p. 2). Accordingly, Plaintiffs' motion should be denied.

## POINT IV

### PLAINTIFFS' DECLARATIONS SHOULD BE DISREGARDED TO THE EXTENT THEY ATTEMPT TO SUPPLY CONTEXT OR RATIONALES CONCERNING V.S.'S ALLEGED SPEECH

Both V.S. and his mother have submitted declarations in support of their motion for injunctive relief purporting to explain and place in context the "speech" in which V.S. engaged.

Such material should be stricken and given no consideration, because it was not part of the record considered by Defendant Ahearn or Defendant Board of Education in either imposing or affirming his suspension, and thus cannot bear on the objective reasonableness of the District's action in imposing the suspension.

Plaintiffs' declarations variously claim that the "Snapchat" video "was not directed at the school in any way," attempt to establish a context for the Snapchat video of V.S.'s sister loading a gun, provide allegations regarding racist conduct V.S. supposedly experienced, explain V.S.'s purported rationales for his various "tweets," and otherwise provide information attempting to excuse V.S.'s conduct. (See, e.g., Declaration of Debra Spero ¶12; Declaration of V.S. ¶¶ 2, 3, 4, 5, 6, 8, 9, 10, 11, 16, 17, 18, 19, 21, 22, 23, 27, 39, 41, and 43.)

Neither Plaintiff testified at the hearing that led to V.S.'s suspension, or otherwise provided this information to the District. (See, Ahearn Affidavit, ¶¶23-33). The information does not bear on the question of irreparable harm, and is apparently offered in an attempt to buttress Plaintiffs' claim that they have a likelihood of success on the merits. However, because the claim is of First Amendment retaliation, and the question in this context is whether the District's action was objectively reasonable in light of the information known to the District, any other information not known to the District prior to the suspension is irrelevant and should be given no consideration.

Under Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 509, 89 S.Ct. 733 (1969), whether a District's response to student speech can give rise to liability depends on whether it was objectively reasonable for the District to predict disruption from the speech. Information not known to the District at the time of the suspension cannot bear on the objective reasonableness of the District's determinations and predictions of disruption.

15

Therefore, it is irrelevant to the question of Plaintiffs' likelihood of success on the merits, and this Court should strike the pertinent portions of Plaintiffs' declarations and give those portions no consideration on this motion.

## CONCLUSION

For all the foregoing reasons, and upon all the above-cited authorities, Defendants Vestal Central School District and Board of Education, Jeffrey Ahearn, Albert Penna, Clifford Kasson and Deborah Caddick respectfully request this Court deny Plaintiffs' motion for a preliminary injunction, along with such other and further relief as is just.

Dated: May 15, 2017
East Syracuse, New York

Respectfully submitted,

**THE LAW FIRM OF FRANK W. MILLER**

**s/Christopher M. Militello**
**Christopher M. Militello, Esq.**
**Bar Roll No.: 515016**
**Frank W. Miller, Esq.**
**Bar Roll No. 102203**
**Charles C. Spagnoli, Esq.**
**Bar Roll No. 507694**
*Attorneys for Defendants Vestal Central School District, Jeffrey Ahearn, Albert Penna, Deborah Caddick, Clifford Kasson*
6575 Kirkville Road
East Syracuse, New York 13057
Telephone: 315-234-9900
Facsimile: 315-234-9908
fmiller@fwmillerlawfirm.com
cspagnoli@fwmillerlawfirm.com
cmilitello@fwmillerlawfirm.com