UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**DEBRA SPERO, as Natural Mother of**
**V.S., an infant**

                         Plaintiffs,

v.                                                   **AFFIDAVIT OF**
                                                                            **KATHARINE DYER**

                                                                         Civil Action No.: 3:17-cv-00007

**VESTAL CENTRAL SCHOOL DISTRICT**
**BOARD OF EDUCATION, VESTAL CENTRAL**
**SCHOOL DISTRICT, JEFFREY AHEARN,**
**Superintendent of Schools, ALBERT A. PENNA,**
**Interim Principal of Vestal High School,**
**DEBORAH CADDICK and CLIFFORD KASSON,**
**in their Individual and Official Capacities,**

                        Defendants,

---

STATE OF NEW YORK   )
COUNTY OF BROOME   ) ss.:

I, **KATHARINE DYER,** being duly sworn, depose and say:

1. I am resident of Broome County, New York and I am a teacher at the Vestal Central School District. I am a New York State certified teacher in the area of secondary mathematics grades 7-12. I have been a classroom teacher for the past 12 years.

2. During the current school year, i.e., the 2016-2017 school year, I was assigned to teach, among other classes, a course entitled "Foundations of College Math".

3. This was a class that included primarily senior high students of the Vestal Central School District. Among those students assigned to the class was V.S.

4. V.S. was a student in the class. Attached hereto as **Exhibit "A"** is a copy of his grade reports from eSchool, a computerized gradebook which maintains the grades of students. Prior to being suspended, it was my observation that V.S. did not always work diligently in my class, and was sometimes a disruptive influence. By December of 2016, after the incident occurred in which he

1

claims that I made racist remarks, his grades were failing in the class.  V.S. had been suspended from school in early December, but I was sending work home to him and providing with the opportunity to stay current in the class.

5.  The series of events that led to V.S.'s current suspension started November 22, 2016, when he called me a fucking racist during class.  As a result of this inappropriate remark, I sent him to the principal's office, and V.S. was placed upon senior probation as a penalty.  From my observation, it appeared that V.S.'s comment was a reaction to my criticism of his behavior in class, which was often disruptive.

6.  I can state categorically that at no time did I make or say any racist remark or comment toward V.S. or any other student in my class.  I am, quite simply, horrified by the allegations made against me.

7.  I can also state that at the time that V.S. made his allegations, the District conducted an investigation of those allegations and found no evidence to substantiate any improper conduct by me.  I am reliably informed that the District interviewed all of the students in the class and found no evidence to substantiate any comment attributed to me by V.S.

8.  I testified in similar fashion at the hearing regarding V.S.  I took an oath and told the truth.  At no time did I make any racist or inappropriate remark to V.S.  In my dealings with V.S., I was at all times professional and dealt with his comments and his behavior appropriately.

9.  I wish to state that the use of highly offensive and inappropriate language by V.S. was a violation of the rules of the school and a violation of the School Discipline Code.

10. After V.S. was suspended from my class, he began to make highly public allegations that I had made racist remarks to him.  Although these allegations were baseless and untrue, he took actions to make sure that these false allegations were widely publicized.

11. The pattern of wide publication of these false and baseless remarks first began with social media.  Then, once the matter was investigated by District Administration, upon information and belief, V.S. contacted a local attorney, Ronald Benjamin, who undertook the representation of V.S.

12. V.S., his parents, and Mr. Benjamin all held press conferences at which they announced and promoted these false allegations against me.  I immediately became the object of hatred and scorn.  I understand that the District received numerous messages, e-mails and posts on social media attacking me as a racist, and the District as my employer.  These messages caused me tremendous

distress and created a significant disruption in the high school.

13. One of the remarks that V.S. made during the course of this matter was to recite the name of my husband, and the name of the street my family lives on, during class. I interpreted V.S.'s actions as intended to convey the idea that he knew where we lived, and who my husband was. These remarks made me feel threatened and made me feel unsafe.

14. This incident, following the press conferences held, became news in our area for weeks. My reputation has been sullied by these false and baseless allegations.

15. Following this incident, I requested that I be relieved of my teaching duties and responsibilities for a period of time, in particular when V.S. was reassigned to the school while his Education Law §3214 hearing was pending.

16. I was overcome with stress, humiliation and frustration over the continued publication of these false allegations. I did not want to endure the possibility of any further baseless allegations.

17. V.S. continued to make allegations against me. He was quoted in various articles and reports not only reaffirming the false allegations of racism, but, upon information and belief, also stated that I was a poor teacher who was not instructing him well.

18. It is significant to note that V.S. was never able to produce any witness who confirmed any of his statements. This is because his allegations are wholly unfounded and without merit. I wish to reaffirm to the Court that at no time did I make any racist remark to V.S., or any other student for that matter.

19. V.S. has also made allegations that I had a "racist seating chart" wherein the students of color were moved to the back of the room. This allegation, as well, is utterly false. While it is true that I moved students around several times during the course of the school year prior to the suspension of V.S., that was done for purposes of classroom management. Students were assigned and relocated on a random basis in order to avoid them talking to each other during class and to accomplish sound pedagogical objectives. This issue was raised in the Education Law §3214 hearing as well the allegations of a racist seating chart were investigated and disproven.

20. This episode has been the most traumatizing episode of my life. I have never before been accused of such heinous words or actions.

21. I have informed Superintendent Ahearn that if V.S. were to return to regular attendance at school, I could not be present in a class where V.S. was in attendance. If that were to occur, it is likely that I would be relieved of my teaching responsibilities in order to avoid further confrontations or additional baseless allegations.

22. These baseless allegations and the high-profile notoriety of these allegations which were featured in newspapers, radio, television, social media and the internet, have caused untold psychological trauma to me and to my family.

23. I believe that V.S. has available to him other options to continue his education such as homeschooling, a GED program, and summer school.

Date: May 15, 2017
Vestal, NY

*Katharine Dyer*
**KATHARINE DYER**

Sworn to before me this 15th day of
May, 2017

*Elizabeth J Engle*
Notary Public

[Notary Seal: ELIZABETH J ENGLE, No. 01EN6334107, Exp. 12/07/20__, BROOME COUNTY, STATE OF NEW YORK]

4