UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**DEBRA SPERO, as Natural Mother of**
**V.S., an infant**

                              Plaintiffs,

    v.

                                                   Civil Action No.: 3:17-cv-00007

**VESTAL CENTRAL SCHOOL DISTRICT,**
**JEFFREY AHEARN, Superintendent of Schools,**
**ALBERT A. PENNA, Interim Principal of**
Vestal High School, **DEBORAH CADDICK,**
**CLIFFORD KASSON AND KATHERINE DYER,**
in their Individual Capacities,

                              Defendants,
_____

_____

# DEFENDANTS' REPLY MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

_____

**DATED:  December 18, 2017**　　　　　　**SUBMITTED BY:**
　　　　　　　　　　　　　　　　　　　　**THE LAW FIRM OF FRANK W. MILLER**

　　　　　　　　　　　　　　　　　　　　**FRANK W. MILLER**
　　　　　　　　　　　　　　　　　　　　　　**Bar Roll No. 102203**
　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*
　　　　　　　　　　　　　　　　　　　　**6575 Kirkville Road**
　　　　　　　　　　　　　　　　　　　　**East Syracuse, N.Y. 13057**
　　　　　　　　　　　　　　　　　　　　**Telephone:  (315) 234-9900**
　　　　　　　　　　　　　　　　　　　　**Facsimile:   (315) 234-9908**

## INTRODUCTION

Defendants moved for summary judgment and judgment on the pleadings dismissing Plaintiff's Complaint, arguing (1) the First Amendment claims failed because the District reasonably predicted substantial disruption of its operations from V.S.'s posting of a video of a woman unloading a handgun shortly after he posted angry messages regarding alleged racism at the school district, (2) the substantive due process claim failed because the eighteen-month suspension did not, as a matter of law, "shock the conscience," (3) the individual Defendants were entitled to qualified immunity, and (4) Defendants Kasson and Caddick should be dismissed because there were no individual allegations against them.  Plaintiff's opposition concedes that Defendants Kasson and Caddick should be dismissed, but raises purported arguments against the rest of Defendants' motion.  Plaintiff also claims discovery is needed on disputed facts which could prevent summary judgment.  Defendants submit the following reply.

## ARGUMENT

## POINT I

### THE UNDISPUTED FACTS ARE SUFFICIENT TO ESTABLISH THE DISTRICT REASONABLY PREDICTED SUBSTANTIAL DISRUPTION FROM V.S.'S POSTS

Plaintiff has admitted facts establishing that it was objectively reasonable for the District to predict substantial disruption from V.S.'s posts, and summary judgment is thus appropriate.

1

As discussed in Defendants' original motion papers, even if V.S.'s posts were protected by the First Amendment,[1] the District's response would be permissible if it reasonably predicted material and substantial disruption to its operations. *Doninger v. Niehoff,* 527 F.3d 41, 48 (2d Cir. 2008). It is not necessary to show disruption actually occurred, only that it was objectively reasonable to predict it. *Defabio v. Easthampton Union Free School District,* 623 F.3d 71, 79 (2d Cir. 2010). Further, it is not merely potential disruption by the students that may be considered when a school district responds to student speech, but also potential disruption to operations when the conduct of the offending student pushes administrators to make certain decisions or take certain actions that otherwise would not have been necessary. Thus, for example, in *Wisniewski v. Board of Education of the Weedsport Central School District,* 494 F.3d 34 (2d Cir. 2007), the Second Circuit noted that a student's off-campus messaging "icon" depicting a teacher being shot, "once made known to the teacher and school officials, would foreseeably create a risk of substantial disruption within the school environment." *Id.* at 40. If the Second Circuit's concern was only with disruption among and by the school district's students, it would not have specified the disruption to be predicted once the icon came to the attention of the teacher and the school officials. *See also Doninger, supra* (considering fact that school officials had to deal with a deluge of calls and e-mails as a result of student's speech, in evaluating disruption that occurred and reasonableness of prediction of further disruption).

Plaintiff argues that the *"Cuff-Doninger-Wisniewski* standard" has not been applied to speech on a matter of "political and social importance or public concern" (Plaintiff's Memorandum p. 10), implying that a reasonable prediction of disruption should be ignored in

---

[1] Contrary to Plaintiff's Memorandum at p. 9, Defendants did not "tacitly concede" the speech was protected. Their argument on the First Amendment claim expressly was presented on the assumption that a question existed as to whether V.S.'s speech was protected at all. See Defendants' Memorandum at p. 6.

2

connection with First Amendment claims by students engaging in speech on matters of public concern.  This turns the private/public concern distinction, as used in other contexts, on its head; although that division has been used, for example, in evaluating First Amendment claims made by public employees against their employers, they have been held to enjoy *no* First Amdnement protection against adverse employment actions when speaking on matters of purely private concern, and their protection when speaking on matters of public concern has been circumscribed where the employer reacts based on a reasonable prediction of disruption to its operations.  *See Waters v. Churchill,* 511 U.S. 661, 674 (1994); *Connick v. Myers,* 461 U.S. 138, 149-150 (1983).

Plaintiff professes to have found no Second Circuit decision in which the analysis has been applied to matters of public concern.  Defendants respectfully refer the Court to *Guiles v. Marineau,* 461 F.3d 320 (2d Cir. 2006), in which the Second Circuit – in a case involving a student wearing a t-shirt critical of the president, plainly speech on a matter of public concern – recognized that under *Tinker* and other Supreme Court decisions, schools have wide discretion to prohibit student speech that is vulgar, lewd, indecent, or plainly offensive; can censor school-sponsored speech for reasons related to legitimate pedagogical concerns; and *"for all other speech . . .* [s]chools may not regulate student speech *unless it would materially and substantially disrupt classwork and discipline in the school." Id.* at 325 (emphases added); *see also id.* at 330 (taking note not only that no substantial disruption had actually occurred, but also that the defendants did not contend they had a *reasonable belief* that it would).[2]

---

[2] It is respectfully submitted that the Second Circuit's description of the class of speech which may be restricted on a prediction of substantial disruption – "all other speech" – is sufficiently embracing as to dispose of Plaintiff's arguments that V.S.'s speech should not have been subject to discipline simply because it did not name a specific target for potential violence, contain a "vulgar remark," or appear to be a "call to action."

3

Even if Plaintiff missed this precedent, she need merely have cast her eyes higher – to the Supreme Court's decision in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969) itself – to find such a precedent. *Tinker,* of course, involved students wearing armbands to protest the Vietnam War. A more paradigmatic example of speech on an issue of public concern by students can hardly be imagined, yet *Tinker* expressly concerned itself with whether there was evidence "that the school authorities had reason to anticipate that the wearing of the armbands would substantially interfere with the work of the school or impinge upon the rights of other students." *Id.* at 509.

Here, Plaintiff has admitted at least the following. After calling a teacher a "fucking racist" in class, being placed on "senior probation," making comments in class apparently designed to intimidate the same teacher, and subsequently being suspended for a short time, V.S. sent out a series of tweets from December 2 through 5, 2016 accusing the District of racism and plainly evidencing his anger at the District. (SMF ¶¶ 8-11.) He was aware students were receiving and viewing the tweets. (SMF ¶ 12.) On December 7, 2016, he posted a video of an unidentified female unloading a handgun.[3] (SMF ¶ 13.) Although Plaintiff claims the video was of his sister showing the proper way to unload and store a handgun, it is beyond dispute that nothing in the video indicated that was the purpose or message of the video. (See Payne Declaration Exhibit B.) V.S. was aware that students received the video and that it was viewed by students. (SMF ¶ 14.) At least two students raised the postings with the District, expressing

---

[3] Playing with the term "unidentified," Plaintiff disputes this, asserting the female was V.S.'s sister. However, Plaintiff cannot avoid the fact that the video, as posted on Snapchat, did not identify the female as V.S.'s sister. In fact, it described her only as a "Guidette with a strap." (See Payne Declaration Exhibit B.)

4

concern about it.[4]  (SMF ¶ 15.)  The District also fielded at least three telephone calls respecting the posting of the video – one from V.S.'s father, one from a New York State Police captain who was the father of one of the students who reported concerns, and a third from the mother of another of the students who reported concerns.  (SMF ¶ 16.)  There was further "discussion in the commons" about the alarming video.  (Plaintiff's Memorandum, p. 5.)  At least two students who had reported their concern over the video asked to be escorted to the guidance office at the end of the school day, stating they were scared.  (Plaintiff's Memorandum, pp. 5, 16-17.)  The District's School Resource Officer visited V.S.'s home with other officers because of the video's depiction of a gun in these particular circumstances.  (SMF ¶ 17.)  The next day, the District canceled a state-mandated "lockdown drill."  (SMF ¶ 19.)

These admitted (or indisputable) circumstances are sufficient to establish the District reasonably predicted substantial disruption from the posts, and summary judgment is thus appropriate without the need to address any disputed issues of fact.  Multiple student claims of concern – regardless of the students' true motivation – could reasonably be predicted from V.S.'s posting, as could the need to field multiple calls to the District.  More significantly, the Snapchat video of the handgun, considered in the context of V.S.'s recent tweets evidencing his anger toward the District, could reasonably be predicted to engender significant concern and fear among the student body.  *Contrast J.C. v. Beverly Hills Unified School District,* 711 F.Supp.2d 1094 (C.D.Calif. 2010) (video was not violent or threatening); *T.V. v. Smith-Green Community*

---

[4] In fact, there were more students who complained or expressed concern about the handgun video, and there were more than three calls from parents expressing similar concerns.  (See Talbut Aff. and Penna Aff.)  However, for purposes of this motion, Defendants will rely upon only the number of student complaints and parent calls that appear to be undisputed.

Plaintiff suggests the "two" students claimed concern only to get out of school early, but cites no evidence that the students in question expressed this to the District, or that the District had evidence before it that compelled that conclusion. (Plaintiff's Memorandum, p. 3.)  It is noted that V.S.'s father's suggestion to that effect (id.) could hardly be accepted by the District as adequate to dismiss the students' stated concerns.

5

*School Corp.,* 807 F.Supp.2d 767 (N.D.Ind. 2011) (photographs only prompted concern of vague "issues" among members of sports team, not fear of violence).  Further, as discussed below, it could reasonably be predicted to force the District to cancel the state-mandated lockdown drill that happened to be scheduled for the very next day.  It is respectfully submitted that these reasonably predictable results of V.S.'s posts would amount to "material and substantial disruption" of the District's operations.  Indeed, this case has disturbing parallels to *Bradford v. Norwich City School District,* 54 F.Supp.3d 177 (N.D.N.Y. 2014), in which two students exchanged texts discussing their hatred for a third student, and in the process exchanged a picture of a gun symbolizing what they wished to do to her - all facts this Court found sufficient for the school district to reasonably predict substantial disruption from their speech.  *Id.* at 185-186.[5]

With respect to the lockdown drill, the question in this case is not the District's actual motivation in canceling the drill.[6]  It would not even matter if there had been a factual issue as to whether the lockdown drill was actually canceled.  The issue under *Doninger* and *Defabio* (as well as the Supreme Court case underpinning this analysis, *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969)) is whether an objective school administrator would have felt the need to cancel the drill under the circumstances.

---

[5] Plaintiff also contends the length of the suspension should be considered in determining whether the District's actions were permitted under *Tinker* and its progeny.  However, *Tinker* nowhere suggests that its "reasonable prediction of substantial disruption" measure takes into account the purported "reasonableness" of the actions taken by a school disrtict once it has reasonably predicted substantial disruption will occur.  Plaintiff supports this argument only with citations to two cases that expressly refused to consider whether the severity of the disciplinary actions involved could violate the First Amendment or the Constitution.  See Plaintiff's Memorandum, p. 15.  It is respectfully submitted that this inquiry is one of substantial due process, and Plaintiff cannot evade the "shock the conscience" standard of substantial due process claims by trying to camouflage her challenge to the length of the suspension as part of V.S.'s First Amendment claim.

[6] Plaintiff speculates the District did this to build a case for extension of V.S.'s suspension.  The wholly self-serving and unfounded speculation that the District canceled a schoolwide, state-mandated lockdown drill solely to create a basis to later justify retaliation against V.S. is utterly implausible.  It is respectfully submitted that such a wild supposition cannot create a genuine issue of fact as to the District's motivation.

6

With an embittered suspended student posting angry messages and a video of a handgun being unloaded; multiple students reporting they were alarmed by the video; multiple parents calling the school concerning the issue; and students in the school discussing the issue and predictably fearful that V.S. planned some violent incident, it would be objectively reasonable for an administrator to conclude that conducting the (unannounced) lockdown drill created an unacceptable risk of panicking students already primed to believe an active shooter might visit their school.  Further, it would be reasonable to expect that the panicked students would call their parents during the drill, in turn panicking the parents.  The parents could then be expected to place frightened calls to the District and/or law enforcement authorities regarding a possible live shooter at the school.  The further consequences can readily be imagined.

The reasonablenss analysis is greatly simplified by reframing it as a question:

Under the circumstances, *what idiot would go forward with the lockdown drill?*

## POINT II

### THE SUBSTANTIVE DUE PROCESS CLAIM SHOULD BE DISMISSED

Defendants sought dismissal of the substantive due process claim pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The argument is that an eighteen-month suspension from school does not, as a matter of law, rise to the level of a substantive due process violation under any circumstances, because it is not a punishment that "shocks the conscience and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Smith v. Half Hollow Hills Central School District,* 298 F.3d 168, 173 (2d Cir. 2002).  The claim is reserved to wholly arbitrary or extreme conduct, such as when a teacher grabs, yells at, and

7

beats a student.  *See Johnson v. Newburgh Enlarged School District,* 239 F.3d 246, 251-252 (2d Cir. 2001).  In particular, "'review and revision of a school suspnsion on substantive due process grounds would only be available in a rare case where there was no "rational relationship between the punishment and the offense."'"  *Rosa R. v. Connelly,* 889 F.2d 435, 439 (2d Cir. 1989) (quoting *Brewer v. Austin Independent School District,* 779 F.2d 260, 264 (5th Cir. 1985)).

While the parties dispute the proper interpretation to be given V.S.'s Snapchat post, the Amended Complaint sets forth the texts sent by V.S. and a description of the Snapchat video involving the gun, as well as various aspects of the resulting disruption (including the cancellation of the lockdown drill), and the length of V.S.'s suspension.  Obviously, this argument does not require the Court to look beyond the allegations of the Complaint, and it is appropriate for resolution on a motion for judgment on the pleadings.

As to Defendants' argument for summary judgment, the same list of admitted facts from Point I is relied upon here.  It is respectfully submitted that in light of the admitted disruption caused by V.S.'s posts, Plaintiff cannot argue the eighteen-month suspension was a substantive due process violation.  *Cf. Tun v. Whitticker,* 398 F.3d 899, 904 (7th Cir. 2005) (while expulsion of student for "horsing around in the boys' locker room" may have been overreaction, it did not violate substantive due process rights); *McDonald v. Sweetman,* 2004 U.S. Dist. LEXIS 5558, *20-21 (D.Conn. 2004) (suspension of student despite fact that evidence showed she did not actually bring marijuana-laced brownies to school was "adult decisionmaking at its worst: arbitrary, insenstivie, intolerant of reasoned response, and unwilling to concede error," but did not cause her physical injury or place her in physical danger, and did not violate substantive due process rights); *Horton v. Board of Education of Sherburne-Earlville Central School District,* 2017 U.S. Dist. LEXIS 60719 (N.D.N.Y. 2017) (granting motion for judgment on pleadings,

8

finding suspension from November, 2014 through end of 2014-2015 school year did not violate substantive due process, without examining or even mentioning nature of student's misconduct).

## POINT III

### DEFENDANTS AHEARN AND PENNA ARE ENTITLED TO QUALIFIED IMMUNITY

Again, in light of the list of admitted facts from Point I of this memorandum, it is respectfully submitted that Defendants Ahearn and Penna are entitled to qualified immunity upon Plaintiff's claims. Qualified immunity applies unless the contours of the right at issue are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 413 U.S. 635, 640 (1987). Here, where an embittered student posts a series of accusatory messages and then a video of a person with a gun, prompting student and parent expressions of concern and forcing changes in a planned schoolwide activity, it would hardly be clear to a reasonable official that imposing a suspension violates the student's First Amendment rights.[7]

## POINT IV

### PLAINTIFF'S REQUEST FOR DISCOVERY IS MERITLESS

As the foregoing shows, the Court may grant summary judgment to Defendants on each of Plaintiff's claims based on only the admitted and undisputed facts. Any further discovery

---

[7] There is, it must further be noted, no allegation or evidence that Defendant Penna played a role in selecting or imposing the eighteen-month suspension challenged herein. Only school district superintendents can impose suspensions exceeding five days in duration. New York Education Law §§ 3214(b)(1), (c)(1). Absent allegations of personal involvement in the long suspension, Defendant Penna should be dismissed from the litigation.

9

would thus, by definition, be unnecessary for Plaintiff to meet the present motion, and a waste of the parties' resources. It is respectfully submitted that Plaintiff's request pursuant to Rule 56(d) should be denied.[8]

## CONCLUSION

For all the foregoing reasons, and upon all the above-cited authorities, Defendants demand summary judgment and/or judgment on the pleadings dismissing the Amended Complaint and each and every claim therein.

Dated: December 18, 2017
East Syracuse, New York

Respectfully submitted,

**THE LAW FIRM OF FRANK W. MILLER**

**s/Frank W. Miller**
**Frank W. Miller, Esq.**
**Bar Roll No. 102203**
*Attorneys for Defendants Vestal Central School District, Jeffrey Ahearn, Albert Penna, Deborah Caddick, Clifford Kasson*
6575 Kirkville Road
East Syracuse, New York 13057
Telephone:  315-234-9900
Facsimile:  315-234-9908
fmiller@fwmillerlawfirm.com

---

[8] Plaintiff complains she did not cross-examine Defendant Caddick during the preliminary injunction hearing. Although the hearing was interrupted before the cross-examination could occur, it was scheduled to resume, at which time Plaintiff could have conducted her cross-examination. Plaintiff, however, chose to withdraw her request for a preliminary injunction before that happened. (Cotter Declaration ¶¶ 6-7.) Thus, Plaintiff had the opportunity to cross-examine Ms. Caddick, and it was Plaintiff's free choice not to proceed.

10