UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA SPERO, as Natural Mother of V.S., an infant,

                       Petitioners,        Civil Action No.: 3:17:CV-7 (GTS-DEP)

-against-

BOARD OF EDUCATION OF THE VESTAL CENTRAL
SCHOOL DISTRICT,

                       Respondent.
_____

STATE OF NEW YORK:
                     :ss
COUNTY OF BROOME:

Wendy K. DeWind, being duly sworn, hereby affirms the following:

1. I am a member of the law firm of Hogan, Sarzynski, Lynch, DeWind & Gregory, LLP and I am fully informed as to the facts and circumstances of this action.

2. Our office represents the Vestal Central School District, a central school district organized under the New York State Education Law, hereinafter Defendant, with respect to the above matter and as general counsel.

3. I was the prosecuting attorney in the disciplinary action against V.S. pursuant to Education Law 3214(3)(c) and subsequent appeals to the Board of Education and Commissioner of Education.

4. This affidavit is submitted in opposition to the Plaintiff's request for a preliminary injunction.

5. On December 14, 2016, the Superintendent filed charges pursuant to Education Law 3214(3)(c) against V.S. regarding harassing and intimidating conduct.

6. The Superintendent's hearing was scheduled for December 20, 2016 before hearing Officer Michael Sherwood.

7. Prior to the start of the hearing, on or about December 18, 2016, the District became aware of additional social media postings regarding "The Vestal Central School District Administration is about to try to destroy the career of a young man by the name of V.S., a senior, who called his math teacher, Katherine Dyer, a fucking racist, in response to a statement she made…" See Exhibit 1 attached hereto.

8. This social media post provided contact information for one of Attorney Ronald Benjamin's assistants, Diane Walter and asked the public to contact Ms. Walter if they wanted additional information.

9. Free Spero post it notes were found around the school.

10. Posters regarding "Free V.S." were posted in the local area. See Exhibit 2, attached hereto.

11. Citizen's Action of New York, Southern Tier Chapter picked up the story and began to post about it.

12. Many of the local news outlets began to post stories about V.S. and his allegations.

13. As a result of the social media posts and of the new articles, Ms. Dyer's good name was ruined before the allegations could be disproved.

14. As a result of the social media postings, the District's good reputation was also ruined and the District, including the high school, remained in turmoil for the duration of the hearing.

15. The initial date for the hearing was December 20, 2016. There were approximately 50 to 100 people present in support of V.S. who were looking to observe the evidence.

16. The District was forced to obtain police coverage for crowd control and at least three Vestal Police Department officers were present to assist myself and the District in crowd control.

17. Attorney Ronald Benjamin was present and representing V.S. and his family. Extensive arguments were made on the record regarding whether the hearing should be open to the public and whether the speech which was the subject of the charges was protected by first amendment rights of V.S.

18. At the hearing on December 20, 2016, V.S., through his attorney, made a motion to dismiss based on first amendment protections. It was agreed to brief the issue.

19. Further, at this time, many student subpoenas were requested by Mr. Benjamin on behalf of V.S. including approximately 11 student subpoenas. The hearing office signed the subpoenas.

20. Mr. Benjamin began to use every technique he could to delay the hearing. At one point, during a phone conference trying to schedule hearing dates, he refused to move his lunch so a hearing could commence before late afternoon.

21. Further, during the same phone conference, Mr. Benjamin stated that if I did not accept services as he requested, he would use every trick he could think of to delay the hearing.

22. Mr. Benjamin and V.S. used the delay to meet with students from the Math class who were subpoenaed and who are minors, and some of whom have disabilities, without parental consent or knowledge to take statements for testimony.

23. V.S. was directed not to serve subpoenas on school property. Despite this, V.S. directed his girlfriend to serve student subpoenas on school property.

24. The hearing officer ruled that the hearing was to be closed and ultimately it was decided that the first amendment issues should be briefed due to the complexity of the law. After taking Ms. Dyer's testimony, the hearing adjourned.

25. The Vestal Police felt that Ms. Dyer should have a police escort home even though her husband had taken the day off and could accompany her home. The Vestal Police also indicated they would be doing drive by's of her house and discussed basic security measures she could take. They were concerned about the level of animosity of the crowd and V.S.

26. Initially, the student was out on suspension pending the hearing. After the hearing was continued past December 20, 2016, the student was returned to school on January 4, 2017 with the directive that V.S. not discuss the pending Superintendent's hearing and not engage in any disruptive behavior.

27. The only way the student could be returned to class was by reassigning Ms. Dyer to a different building and different responsibilities. Ms. Dyer was subject to very public statements naming her as a racist. Her reputation was permanently damaged by these unfounded allegations of racism.

28. Throughout the hearing process, Mr. Benjamin frequently raised issues and requested telephone conferences with the hearing officer. For example:

   a. Correspondence from Mr. Benjamin, on behalf of V.S. was received on January 5, 2017 regarding issuance of subpoenas and regarding District allegations of sensationalism by Mr. Benjamin and V.S.

   b. A conference call was held on January 6, 2017 between the hearing officers and the attorneys regarding subpoenas and production of district records.

   c. On January 6, 2017, Mr. Benjamin submitted a fax to the hearing officer regarding meetings between myself and the District administration and the students Mr. Benjamin subpoenaed.

d. On January 10, 2017, Mr. Benjamin again requested a phone conference via correspondence to address procedural issues.

e. On January 13, 2017, both parties submitted their memoranda regarding the motion to dismiss based on first amendment protections.

29. On January 17, 2017, the parties returned for a second day of hearing. Again, there were many spectators present which required the presence of police for crowd control. News media was also present. Mr. Benjamin was present on behalf of V.S.

30. Here, the District provided the student with opportunities for representation, there was extensive motion practice, subpoenas were requested and provided, witnesses testified including witnesses for the student, and extreme allowances made in procedure for the family once they no longer had counsel. The family was not denied the right to counsel or any other due process right.

31. On the morning of January 25, 2017, in an off the record discussion with the family, Mr. Spero informed the District that Mr. Benjamin would not be attending the hearing because he wanted more money from the Spero family. The family was not going to pay it. The family asked to have time to find another attorney which the District felt was another delay tactic by the family. The District pushed to move forward and the hearing officer agreed.

32. When the hearing resumed on the morning of January 30, 2017, Mrs. Spero began shouting "racist" during the hearing on the next day and refused to be respectful or quiet to the extent I had to warn her that I would have her removed by the police if she did not settle down.

33. V.S. had a full and fair opportunity to litigate during the superintendent's hearing with the assistance of counsel. Further, they were given every consideration and took ample opportunity of it to make statements on the record and to call witnesses.

34. Once the hearing closed, the hearing officer issues a decision suspending V.S. through June 30, 2018 as a result of his misconduct and past anecdotal record.

35. Upon receipt of the hearing officer's decision, the parent appealed to the Board of Education who heard the appeal at the earliest date possible, April 11. Prior to making a determination, the Board reviewed the entire record and heard oral argument by the new attorneys for V.S. The Board upheld the Superintendent's decision.

36. Once V.S. received the Board's determination, the appealed to the New York State Commissioner of Education and requested a stay of the suspension. The Commissioner has denied the stay and the remainder of the appeal is pending.

37. V.S. has also sought to attend school in the Binghamton City School District both as a resident of Binghamton and as a homeless student. Upon information and belief, he has continued to live his parents' residence in Vestal. Binghamton declined admission.

Dated: May 15,, 2017

*Wendy K. DeWind, Esq.*

Sworn to before me this ___ Day of May 15, 2017.

*Notary Public*

GAIL BRENNAN
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01BR4873870
QUALIFIED IN BROOME COUNTY
MY COMMISSION EXPIRES 10/20/2018