CCC



# RESOLUTION AGREEMENT
## Vestal Central School District
## OCR Case No. 02-11-1270

In order to resolve the allegation in Case No. 02-11-1270, the Vestal Central School District (the District) assures the U.S. Department of Education, New York Office for Civil Rights (OCR) that it will take the following actions pursuant to the requirements of Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. Section 2000d et seq., and its implementing regulation at 34 C.F.R. Part 100:

## No Admission of Liability or Wrongdoing:

The District has disputed the complaint underlying this Resolution Agreement, but it has determined that it is in its interest to amicably resolve and settle the disputed issues by entering this Resolution Agreement. By agreeing to this Resolution Agreement, neither the District's Board of Education (the Board) nor any of its officials, officers, employees, agents or representatives admit to any liability, wrongdoing, or discrimination and nothing herein shall be construed as an admission of liability, wrongdoing or discrimination. As a settlement of disputed claims, this Resolution Agreement shall not be admissible in this or any other action against the Board, its officials, officers, employees, agents or representatives.

## Action Item 1:

The District agrees to continue to take all steps reasonably designed to ensure that students enrolled in the District are not subject to a hostile environment and will continue to respond to allegations of harassment on the bases of race, color or national origin, including Jewish ancestry/ethnicity. To this end, the District will continue to conduct prompt, adequate, reliable, and impartial investigations of all incidents of harassment of students on the bases of race, color or national origin, including Jewish ancestry/ethnicity, that are known or reasonably should be known to the District, and will continue to take appropriate action to respond to complaints, which may include disciplinary action against students and/or staff. The District agrees to continue to take prompt and effective responsive action reasonably designed to end the hostile environment if one has been created, prevent its recurrence, and, where appropriate, take steps to remedy the effects of the hostile environment on the affected student(s).

> **REPORTING REQUIREMENT:** By July 31, 2012, and July 31, 2013, the District will provide to OCR documentation of all informal (including oral) and formal complaints of harassment on the basis of Jewish ancestry/ethnicity made during the previous twelve months. This documentation will include copies of each complaint, a description of the complaint, the District's response, and the resolution, including the report of any investigation conducted. If there have been no complaints, the District shall so certify that no discrimination complaints on the basis of Jewish ancestry/ethnicity have been made.

## Action Item 2:

By July 31, 2012, the District will extend a written offer of counseling to Student 1, and all other students of Jewish ancestry/ethnicity who attended the Middle and High schools during school

year 2010-2011, and complained of harassment on the basis of their Jewish ancestry/ethnicity, to remedy any effects of the incidents of harassment directed toward them because of their ancestry/ethnicity. This counseling may be provided by qualified District staff. Appropriate District staff will also determine whether Student 1 and other students of Jewish ancestry/ethnicity require any other services, e.g., tutoring, to remedy the effects of such harassment; and if so, the District's plan for providing such services.

### REPORTING REQUIREMENTS:

a) By July 31, 2012, the District will provide OCR with a copy of the written offers of counseling, as well as documentation indicating the students' or parents' responses to the offers.

b) By July 31, 2012, the District will provide to OCR its determination and any supporting documentation regarding its decision as to whether Student 1 and other students of Jewish ancestry/ethnicity require any other services, e.g., tutoring, to remedy the effects of such harassment; and if so, the District's plan for providing such services.

### Action Item 3:

By September 1, 2012, and periodically thereafter, the District will provide racial discrimination training to all staff at the School. The training will include instruction regarding the following: (a) the requirements of Title VI, including that discrimination and/or harassment based on race, color and national origin (including Jewish ancestry/ethnicity) is prohibited and will not be tolerated; (b) the range of behaviors that constitute discrimination and/or harassment based on race, color and national origin; (c) the disciplinary sanctions applicable to anyone who engages in discrimination and/or harassment based on race, color or national origin, including Jewish ancestry/ethnicity; (d) the responsibility of staff to report incidents of possible discrimination and/or harassment and the procedures for doing so; and (e) where, how and to whom instances of discrimination and/or harassment are to be reported.

> **REPORTING REQUIREMENT:** By September 1, 2012, the District will provide documentation demonstrating that the training referenced in Action Item 4 was provided to all staff at the School. This documentation will include, but will not be limited to, the date(s) of the training; the name and credentials of the trainer; copies of any training materials used, including any handouts, guides, or other materials; and proof of attendance by staff at the high school.

### Action Item 4:

Although the District's harassment policies and grievances procedures may already contain many of the provisions listed below, by July 31, 2012, the District will review and revise, as necessary, its harassment policy and related grievance procedures to ensure that these adequately address complaints of harassment based on race, color and national origin. These procedures will

provide for the prompt and equitable resolution of complaints of harassment based on race, color and national origin. The procedures may already include many of the provisions below, but the District will ensure that these include at a minimum:

- a statement setting forth the District's commitment to having a school environment free from all harassment on the basis of race, color and national origin. The statement will explain that the District prohibits harassment in the school environment, including all academic, extra-curricular and school-sponsored activities. The statement will encourage students to immediately report incidents of harassment and will emphasize that staff must promptly report all incidents of harassment of which they become aware. The statement will specify that the District will investigate formal and informal complaints of harassment;
- notice that the procedures apply to complaints alleging harassment based on race, color and national origin by employees, students, or third parties;
- a recommendation that District staff who observe acts of harassment based on race, color, or national origin intervene to stop the harassment;
- an explanation of how to file a complaint pursuant to the procedures;
- the name, title, office address, and telephone number of the individual(s) with whom to file a complaint;
- definitions and examples of what types of actions may constitute harassment based on race, color or national origin; and of the disciplinary sanctions that may be imposed on the harasser;
- the various steps the District will take to conduct an adequate, reliable, and impartial investigation of all complaints, including the interim preventive measures that the District will take to ensure the safety of the alleged victim and the larger school community during the investigation;
- an opportunity for the parties to present witnesses and evidence;
- designated and reasonably prompt timeframes for major stages of the grievance process, with the initial investigation not to exceed ten (10) school days;
- a requirement that an investigatory report be filled out during the course of the investigation;
- an assurance that the District will ensure that the victims are aware of their rights and available resources;
- an assurance that the District will offer counseling and academic support services to any person found to have been subjected to harassment and, where appropriate, counseling to the person(s) who committed the harassment;
- written notice to parties of the outcome;
- notice of the opportunity for the parties to appeal the findings;
- an assurance that any appeal will be conducted in an impartial manner by an impartial decision-maker, the District will have discretion to appoint the decision-maker with the understanding that the appointed individual will be impartial;
- an assurance and the action steps that the District will take to prevent recurrence of harassment and to correct its discriminatory effects, if appropriate; and
- a statement that Title VI prohibits retaliation against any individual who files a complaint under Title VI or participates in a complaint investigation.

### REPORTING REQUIREMENTS:

a) By July 31, 2012, the District will provide its revised harassment policy and related grievance procedures to OCR for review and approval.

b) As soon as possible after the District's receipt of OCR's approval of the revised policy and grievance procedures, but no later than 60 days, the District will provide OCR with documentation to substantiate that it has formally adopted the revised policy and procedures; updated its printed publications and on-line publications with the revised policy and procedures (inserts may be used pending reprinting of these publications); and electronically disseminated the revised policy and grievance procedures to students, parents, and District staff. This documentation will include at a minimum (i) printouts or a link to all on-line publications containing the revised policy and grievance procedures; (ii) evidence of the electronic dissemination of the revised policy and grievance procedures to students, parents and District staff; and (iii) if not yet finalized, copies of inserts for printed publications.

c) By October 31, 2012, the District will provide to OCR copies of the printed versions of all publications disseminated to students, parents and District staff containing the revised policy and grievance procedures.

### Action Item 5:

By September 1, 2012, and annually thereafter for new staff, the District will provide training to all District staff who are directly involved in processing, investigating and/or resolving complaints or other reports of race, color or national origin (including Jewish ancestry/ethnicity) discrimination, including harassment complaints, and any counselors or other district personnel who are likely to receive reports of such harassment. The training will review the District policies and procedures referenced in Action Item 4 of this Agreement and include instruction on how to conduct and document discrimination and/or harassment investigations in an adequate, reliable and impartial manner, including the appropriate legal standards to apply in such investigation, as well as outline the appropriate disciplinary measures for violations of the anti-harassment policy.

> **REPORTING REQUIREMENT:** By October 31, 2012, the District will provide documentation demonstrating that the training referenced in Action Item 5 was provided to all staff referred to in Action Item 5. This documentation will include, but will not be limited to, the date(s) of the training; the name and credentials of the trainer; copies of any training materials used, including any handouts, guides, or other materials; and proof of attendance by staff directly involved in the processing, investigating and resolving of discrimination complaints.

...

Page 5 of 7 – OCR Case No. 02-11-1270
Resolution Agreement

**Action Item 6:**

The District has established an advisory team of staff members and teachers to meet with the principal to discuss ways to refine educational efforts and programs at the high school to address bullying/harassment. In addition to this responsibility, by June 30, 2012, the advisory team will consult with students (a student committee) and parents to make recommendations regarding how to include discussion about bullying/harassment in the orientation program currently provided to students; and to otherwise provide continuing input to District officials regarding strategies for preventing discrimination and/or bullying/harassment and ensuring that students understand their right to be protected from discrimination and/or bullying/harassment.

> **REPORTING REQUIREMENT:** By July 31, 2012, the District will provide OCR with a copy of the advisory committee's recommendations regarding how to include discussion about bullying/harassment in the orientation program currently provided to students; and strategies for continuing to prevent discrimination and/or bullying/harassment and continuing to ensure that students understand their right to be protected from discrimination and/or bullying/harassment.

**Action Item 7:**

The District has established a student committee to meet with the Principal about incidents of discrimination which may have occurred at the high school. In addition to this responsibility, by April 30, 2012, the student committee will make recommendations to the advisory committee referenced in Action Item 6 above, about how to increase student awareness of the District's anti-discrimination program. The District will ensure that the student committee has the opportunity to provide continuing input to District officials for improving the anti-discrimination program, in consultation with the advisory committee.

> **REPORTING REQUIREMENT:** By July 31, 2012, the District will provide to OCR a copy of the student committee's recommendations to the advisory committee about how to increase student awareness of the District's anti-discrimination program. Additionally, the District will provide to OCR its procedures for ensuring that the student committee has the opportunity to provide continuing input to District officials for improving the anti-discrimination program.

**Action Item 8:**

By October 31, 2012, and annually thereafter, the district will continue to provide an age-appropriate orientation program at its schools for all students that will address discrimination and harassment, including discrimination and harassment based on race, color and national origin (including Jewish ancestry/ethnicity), in order to promote respect and tolerance for others and to avert the creation of a hostile environment for students enrolled in the District. In reviewing and adjusting the orientation program, the District will take into consideration the recommendations made by the student committee and the advisory committee referenced herein. The District will continue to remind students of its commitment to having a school environment free from all discrimination and harassment and explain to students what they should do if they believe they

Page 6 of 7 – OCR Case No. 02-11-1270
Resolution Agreement

or other students are being discriminated against or harassed/bullied. The program will include a review of the District's anti-discrimination policies and procedures, an explanation of what constitutes discrimination, as well as disciplinary sanctions related to findings of violations of its discrimination policies. The program will also include an explanation regarding the District's policy against retaliation. The District will also continue to provide students with the name and contact information of a District employee, such as a counselor, that the students may contact if they wish to discuss privately any concerns they have and remind students of the availability of counseling services.

> **REPORTING REQUIREMENT:** By October 31, 2012, the District will provide documentation demonstrating that the orientation referenced in Action Item 8 was provided to all students at the schools. This documentation will include, but will not be limited to, the date(s) of the orientation; the name and credentials of the presenters; copies of any materials used, including any handouts, guides, or other materials; and a statement verifying attendance by students at the high school.

### Action Item 9:

By September 30, 2012, the District will review and adjust if necessary the process to monitor the effectiveness of its anti-discrimination efforts; i.e., how effective the training and orientation was for staff, and how effective the advisory team and student committee have been in recommending and implementing strategies for preventing discrimination and ensuring an increased student awareness of the District's anti-discrimination program. At the conclusion of each school year, the District will conduct an annual assessment of the effectiveness of its anti-discrimination efforts.

> **REPORTING REQUIREMENT:**
>
> a) By October 31, 2012, the District will provide OCR with a copy or description of its process for monitoring the effectiveness of its anti-discrimination efforts.
>
> b) By July 31, 2013, the District will provide OCR with a copy or description of its assessment of the effectiveness of its anti-discrimination efforts; i.e., how effective the training and orientation was for staff, and how effective the advisory team and student committee have been in recommending and implementing strategies for preventing discrimination and ensuring an increased student awareness of the District's anti-discrimination program.

The District understands that OCR will not close the monitoring of this agreement until OCR determines that the recipient has fulfilled the terms of this agreement and is in compliance with the regulations implementing Title VI, at 34 C.F.R. 100.3, which was at issue in this case. The District also understands that by signing this agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of this agreement. Further, the District understands that during the monitoring of this agreement, if necessary, OCR may visit the District, interview staff and students, and request such additional reports or data as are necessary for OCR to determine whether the

District has fulfilled the terms of this agreement and is in compliance with the regulations implementing Title VI, at 34 C.F.R. 100.3, which was at issue in this case.

| | |
|---|---|
| 5/9/12 | /s/ |
| Date | Authorized Representative |
| | Vestal Central School District |




# U.S. DEPARTMENT OF EDUCATION
### OFFICE FOR CIVIL RIGHTS
### 32 OLD SLIP, 26TH FLOOR
### NEW YORK, NEW YORK 10005

TIMOTHY C.J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

May 21, 2012

Mark D. LaRoach
Superintendent
Vestal Central School District
201 Main Street
Vestal, New York 13850

Re:   Case No. 02-11-1270
      <u>Vestal Central School District</u>

Dear Superintendent LaRoach:

This letter is to notify you of the determination made by the U.S. Department of Education, New York Office for Civil Rights (OCR) regarding the above-referenced complaint filed against the Vestal Central School District. The complainant alleged that from approximately September 2006 to June 2011, the District failed to respond appropriately to complaints that students at the Vestal Middle and High Schools (collectively referred to as "the Schools") subjected a student (Student 1) to harassment because of his national origin (Jewish ancestry/ethnicity).

OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964 (Title VI), as amended, 42 U.S.C. § 2000d <u>et seq.</u>, and its implementing regulation at 34 C.F.R. Part 100, which prohibit discrimination on the basis of race, color, or national origin in programs and activities receiving financial assistance from the U.S. Department of Education (the Department). The District is a recipient of financial assistance from the Department. Therefore, OCR has jurisdictional authority to investigate this complaint under Title VI.[1]

Harassment of students based on national origin (which can include verbal, written, graphic, physical or other conduct by an employee, a student, or a third party) is a form of discrimination prohibited by Title VI and its implementing regulation. Harassment can create a hostile environment if it is sufficiently severe, persistent, or pervasive to limit a student's ability to participate in or receive benefits, services or opportunities, in the institution's program. If a recipient has actual or constructive notice of the harassment,

---

[1] While Title VI does not cover discrimination based solely on religion, discrimination on the basis of actual or perceived shared ancestry or ethnic characteristics is protected under Title VI. Thus, harassment against students who are members of any religious group triggers a school's Title VI responsibilities when the harassment is based on the group's actual or perceived shared ancestry or ethnic characteristics.

the recipient is required to take prompt and effective action to stop the harassment, prevent its recurrence, and as appropriate, remedy its effects.

OCR interviewed the complainant, Student 1, and Student 1's father. OCR also reviewed documentation the complainant and the District submitted.

The complainant alleged that from approximately September 2006 to June 2011, the District failed to respond appropriately to complaints that students at the Schools subjected Student 1 to harassment because of his national origin (Jewish ancestry/ethnicity). Student 1 informed OCR that the alleged harassment began when he attended middle school in the District, and continued after he began attending high school. OCR determined that Student 1 attended middle school during school years 2007-2008[2], 2008-2009, and 2009-2010. Student 1 attended the High School during school year 2010-2011.

OCR determined that the District's Code of Conduct prohibits harassment, which includes "a sufficiently severe action or a persistent, pervasive pattern of actions or statements directed at an identifiable individual or group which are intended to be or which a reasonable person would perceive as ridiculing or demeaning." Further, the Code of Conduct prohibits intimidation, which includes engaging in actions or statements that put an individual in fear of bodily harm. The Code of Conduct includes a list of factors to be considered in assigning consequences and remedial responses, which range from an oral warning to long-term suspension or expulsion. The Code of Conduct further states that District students are expected to promptly report violations to an appropriate staff member such as a teacher, school counselor, or the building principal or designee; and, District staff who are not authorized to impose sanctions are similarly expected to promptly report violations to their supervisor.

OCR determined that the Schools maintain logs and/or notes with entries made by school staff when students are involved in incidents. OCR's review of the Schools' logs from school years 2007-2008, 2008-2009, 2009-2010, and 2010-2011 revealed a number of incidents involving Student 1 and other students that could have constituted harassment on the basis of Jewish ancestry/ethnicity, including name calling such as "cheapie" and chanting "Heil Hitler" and "Nazi." OCR determined that during one particular incident that occurred on or around December 1, 2010, numerous Jewish students were targeted. During this incident, known as "Kick a Jew Day" (which was publicized on Facebook and other social media), students bullied and intimidated Jewish students at the High School[3] by kicking them and making anti-Semitic remarks and gestures, including Nazi salutes/symbols.

---

[2] Although the complaint asserts that Student 1 was a student at the middle school during school year 2006-2007, the District informed OCR that Student 1 did not enroll in the District until October 15, 2007.

[3] OCR determined that during school year 2010-2011, there were approximately 30 Jewish students who attended Vestal High School.

Case 3:17-cv-00007-GTS-ML Document 104-56 Filed 06/17/19 Page 12 of 13
Page 3 of 4 – Superintendent Mark D. LaRoach

As noted above, OCR's review of the School's logs and/or notes revealed incidents of alleged harassment based on Jewish ancestry/ethnicity for numerous school years. For some but not all of the instances, OCR obtained information concerning action taken by the District. For example, concerning the incident on December 1, 2010, the District conducted an investigation by interviewing approximately 32 students (several of whom admitted to the alleged conduct) and 11 staff members. The District contacted the parents of involved students and held conferences with staff. OCR determined that approximately 10 students received out-of-school suspensions, ranging from three to five days. OCR further determined that the school counselor was consulted, and at least one student was directed to attend sensitivity training and to participate in a lesson covering New York State's Dignity for All Students Act. Additionally, the District formed an advisory team of staff members and teachers to meet with the Principal to discuss ways to refine educational efforts and programs at the High School to address the "Kick a Jew Day" incident in particular and bullying in general; and, the District's Superintendent and Assistant Superintendent, as well as the High School's Principal, met with local clergy members and representatives of the Jewish community to discuss the District's response to the incident. The District also formed a broad-based committee of students to meet with the Principal about incidents of harassment occurring at the High School; and provided counseling and educational workshops for students.

Prior to the completion of OCR's investigation, the District voluntarily agreed to take further action as set forth in the enclosed resolution agreement. The desired outcome from implementation of the resolution agreement is to stop the harassment, prevent its recurrence, and as appropriate, remedy its effects. OCR will monitor implementation of the resolution agreement. Should the District fail to fully implement the Agreement, OCR will take appropriate action to ensure the District's compliance with Title VI, including possibly initiating administrative enforcement or judicial proceedings to enforce the specific terms and obligations of the Agreement. Before initiating administrative enforcement (34 C.F.R. §§ 100.9, 100.10), or judicial proceedings to enforce this Agreement, OCR shall give the District written notice of the alleged breach and a minimum of sixty (60) calendar days to cure the alleged breach.

This letter is not intended, nor should it be construed, to cover any issues regarding the District's compliance with Title VI that may exist, but are not discussed herein. This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

The complainant may have a right to file a private suit in federal court whether or not OCR finds a violation. It is unlawful to harass or intimidate an individual who has filed a complaint or participated in actions to secure protected rights.

Under the Freedom of Information Act, 5 U.S.C. § 552, it may be necessary to release this letter and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information that if released, could constitute an unwarranted invasion of personal privacy.

If you have any questions regarding OCR's determination, please contact Ronald L. Scott, Compliance Team Attorney, at (646) 428-3820 or Ronald.Scott@ed.gov; or Tracey Beers, Senior Compliance Team Attorney, at (646) 428-3804 or Tracey.Beers@ed.gov; or Félice Bowen, Compliance Team Leader, at (646) 428-3806 or Félice.Bowen@ed.gov.

Very truly yours,

/s/
Timothy C. J. Blanchard

Encl.

cc:     XXXXX XXXXX, Esq.