UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**DEBRA SPERO, as Natural Mother of**
**V.S., an infant,**

                                 Plaintiffs,

            v.

**VESTAL CENTRAL SCHOOL DISTRICT**
**BOARD OF EDUCATION, VESTAL CENTRAL**
**SCHOOL DISTRICT, JEFFREY AHEARN,**
**Superintendent of Schools, ALBERT A. PENNA,**
**Interim Principal of Vestal High School,**
**DEBORAH CADDICK and CLIFFORD KASSON,**
**in their Individual and Official Capacities,**

                                 Defendants,

---

> **DEFENDANTS' RESPONSE TO**
> **PLAINTIFF'S STATEMENT OF**
> **MATERIAL FACTS IN SUPPORT**
> **OF CROSS-MOTION**
>
> Civil Action No.: 3:17-cv-00007
> (GTS/DEP)

---

        Pursuant to the Court's Local Rule 7.1(a)(3) and 7.1(c), Defendants Vestal Central

School District Board of Education, Vestal Central School District, Jeffrey Ahearn, and Albert

A. Penna provide the following Response to Plaintiff's Statement of Material Facts submitted in

support of their cross-motion for summary judgment.

        1.      Deny.  At some times relevant to the issues in this lawsuit V.S. was a student in

another school district, at other times relevant to the issues in this lawsuit V.S. was in his freshman,

sophomore, and junior years at Vestal High School, and at other times was not attending school.

(See, e.g., Payne Exhibit GG pp. 29, 30; Motion Exhibit 13; Payne Exhibit HH p. 4.)

        2.      Admit.

        3.      Admit.

        4.      Admit.

5.      Deny.  Defendant Ahearn is the Superintendent of Schools for the District.  "District superintendent" is a different title under state law, applicable to an administrator in charge of a board of cooperative educational services or BOCES.  (Ahearn Dep. [Motion Exhibit 12] p. 22; Education Law § 2204.)

6.      Admit.

7.      Admit.

8.      Deny.  At some times relevant to this lawsuit Defendant Penna was not the principal at Vestal High School.  (See, e.g., Payne Exhibit GG pp. 29, 30; Motion Exhibit 13; Payne Exhibit HH p. 4; Penna Dep. [Motion Exhibit 11] pp. 21-22, 43.)

9.      Deny.  Defendant Penna would collaborate with the assistant principals only as to the length of a suspension, not as to whether they suspension would occur.  (Penna Dep. [Motion Exhibit 11] pp. 42-43.)

10.     Admit.

11.     Deny.  At some times relevant to this lawsuit Mr. Kasson was not an assistant principal at Vestal High School.  (See, e.g., Payne Exhibit GG pp. 29, 30; Motion Exhibit 13; Payne Exhibit HH p. 4; Kasson Dep. [Motion Exhibit 10] pp. 13, 23.)

12.     Admit.

13.     Deny.  At some times relevant to this lawsuit, Ms. Caddick was not an assistant principal at Vestal High School.  (See, e.g., Payne Exhibit GG pp. 29, 30; Motion Exhibit 13; Payne Exhibit HH p. 4; Caddick Dep. [Motion Exhibit 9] pp. 10-11, 19.)

14.     Admit.

15.     Admit.

16.     Admit.

17.    Admit.

18.    Deny.  Plaintiff deliberately made knowingly false claims of racism and racist slurs to further his own purposes and/or to harass people.  He told Ms. Dyer he made comments regarding the seating arrangement in her classroom only to give her a "hard time" because she was new.  (Dyer Dep. [Motion Exhibit 6] pp. 14, 17.)  He later claimed he heard her use a racial slur (the "n-word") although he did not, in fact, hear her use a racial slur.  (Compare Plaintiff's Dep. [Motion Exhibit 3] p. 45 with Vieux Aff. ¶¶ 3, 7.)

19.    Admit.

20.    Deny.  The cited record evidence provides no basis for Defendant Ahearn's professed "understanding" that there were forty students involved, and the testimony is thus inadmissible as without foundation, leaving Plaintiffs with no admissible record evidence supporting that allegation.

21.    Admit.

22.    Admit.

23.    Deny.  The cited record evidence is inadmissible hearsay, with the exception of Hollway Declaration ¶ 12.

24.    Admit.

25.    Admit.

26.    Admit.

27.    Admit.

28.    Admit.

29.    Admit.

30.    Deny.  Seven students did not all say that students of color were seated together.
Upon review of Payne Exhibit P, it appears to show only six students referred to students being
seated together (see pages 14, 15-16, 17, 18, 19, 20), and not all of those indicated that every
student of color was seated in the same area.  Page 14 states "At one point she seperated students
by color of their skin.  It could've been accidental because we got new seats within a few days."
Pages 15-16 state "One seating arrangement had all the black students in the back . . . I don't feel
that this was racially motivated . . . I do not think this has anything to do with race.  I think the
race card was pulled to try and retaliate and get back at Mrs. Dyer and get out of the trouble he
was in."  Page 17 states "Our first seat change I believe wasn't okay.  She put one colored student
in the front of the room and the other colored students in the back corner and I don't know if that
were her intentions but I believe it wasn't okay for her to do that."  Page 18 states "The seating
chart and I did notice that my class mates were all sitting together in the corner."  Pag 19 states "3
colored student were sitting in the back corner . . . I don't think Mrs. Dyer did that on purpose, she
is to nice."  Page 20 states "Yes, I think it was a coincidence that all of the colored people were in
a corner."

31.    Admit.

32.    Deny.  (Dyer Aff. ¶ 2; Dyer Dep. [Motion Exhibit 6] p. 43; Vieux Aff. ¶¶ 3, 7.)

33.    Admit V.S. called Ms. Dyer a "fucking racist," but deny that he heard Ms. Dyer say
"fucking niggers."  (Dyer Aff. ¶ 2; Dyer Dep. [Motion Exhibit 6] p. 43; Vieux Aff. ¶¶ 3, 7.)

34.    Admit.

35.    Admit that if the times stated in the sign-in sheet are accurate, I.D. did not reach
the assistant principal's office until two minutes before V.S., but deny that the sign-in sheet

4

establishes with certainty when each student arrived at the office, and note the sign-in sheet is inadmissible hearsay to establish when I.D. arrived.  (See Payne Ex. Q.)

36. Admit.

37. Deny.  (Dyer Aff. ¶ 2; Dyer Dep. [Motion Exhibit 6] p. 43; Vieux Aff. ¶¶ 3, 7.)

38. Deny.  (Dyer Dep. [Motion Exhibit 6] pp. 52-53; Payne Exhibit BB pp. 88-89 and errata appearing at 107-108.)

39. Admit.

40. Admit.

41. Admit.

42. Deny.  One student was named Maxwell, and the other was named Maxx.  (Dyer Dep. [Motion Exhibit 6] p. 65.)

43. Admit.

44. Deny.   (Caddick Dep. [Motion Exhibit 9] p. 51; Brittany Spero Dep. [Motion Exhibit 5] pp. 12-14; Kasson Dep. [Motion Exhibit 10] pp. 47-48; Payne Exhibit P p. 15.)

45. Admit.

46. Deny.  Ms. Dyer not asked during the referenced testimony whether Plaintiff was glaring at her or whether she was intimidated (or how she felt).  Nevertheless, she actually testified at her deposition that she felt "threatened."  (Dyer Dep. [Motion Exhibit 6] p. 69.)  She also testified at the superintendent's hearing that when Plaintiff made his statements, he was "looking at" her.  (Payne Exhibit E p. VS00071.)  She also provided the testimony that Plaintiff was glaring at her and that she felt intimidated through her affidavit supporting Defendants' motion.  (Dyer Aff. ¶¶ 4-5.)

47.    Deny.   The cited record evidence, Payne Exhibit R, is expressly on its face a summary of the September, 2016 and November 22, 2016 incidents, not the December 1, 2016 intimidation incident.

48.    Admit.

49.    Admit.

50.    Admit.

51.    Admit.

52.    Plaintiff deliberately made knowingly false claims of racism and racist slurs to further his own purposes and/or to harass people.  He told Ms. Dyer he made comments regarding the seating arrangement in her classroom only to give her a "hard time" because she was new. (Dyer Dep. [Motion Exhibit 6] pp. 14, 17.)  He later claimed he heard her use a racial slur (the "n-word") although he did not, in fact, hear her use a racial slur.  (Compare Plaintiff's Dep. [Motion Exhibit 3] p. 45 with Vieux Aff. ¶¶ 3, 7.)

53.    Admit.

54.    Admit.

55.    Admit.

56.    Admit V.S. issued the tweets listed, but deny that he actually believed the way he and other students were being treated was a matter of public importance.  Plaintiff deliberately made knowingly false claims of racism and racist slurs to further his own purposes and/or to harass people.  He told Ms. Dyer he made comments regarding the seating arrangement in her classroom only to give her a "hard time" because she was new.  (Dyer Dep. [Motion Exhibit 6] pp. 14, 17.) He later claimed he heard her use a racial slur (the "n-word") although he did not, in fact, hear her use a racial slur.  (Compare Plaintiff's Dep. [Motion Exhibit 3] p. 45 with Vieux Aff. ¶¶ 3, 7.)

57.     Admit.

58.     Admit.

59.     Admit.

60.     Admit.

61.     Admit.

62.     Deny.  Even without expressing a threat in precise words, the tweets and gun video can reasonably be interpreted as a threat of violence.  (See Dauber Dep. [Motion Exhibit 7] pp. 26-27, 34; Motion Exhibit 17, file "Spero video copy'"; Plaintiff's Dep. [Motion Exhibit 3] pp. 76-79; Motion Exhibit 24.)

63.     Admit.

64.     Admit.

65.     Admit.

66.     Admit.

67.     Admit.

68.     Admit.

69.     Admit.

70.     Admit.

71.     Deny.  Even without expressing a threat in precise words, the tweets and gun video can reasonably be interpreted as a threat of violence.  (See Dauber Dep. [Motion Exhibit 7] pp. 26-27, 34; Motion Exhibit 17, file "Spero video copy"; Plaintiff's Dep. [Motion Exhibit 3] pp. 76-79; Motion Exhibit 24.)

72.     Admit.

73.     Admit.

74.     Admit.

75.     Admit.

76.     Admit.

77.     Admit.

78.     Admit that some partly inaccurate rumors about V.S.'s social media posts were being discussed in the commons and hallways of the school, but deny that all the rumors were untrue.  (Dauber Dep. [Motion Exhibit 7] pp. 11-18; Talbut Dep. [Motion Exhibit 8] pp. 35-37.)

79.     Admit.

80.     Admit.

81.     Admit.

82.     Admit.

83.     Admit.

84.     Deny that the record evidence cited (Dauber Dep. 19:13-16) establishes that  J.P. is the student who initially brought the postings to people's attention.  (See also Dauber Dep. [Motion Exhibit 7] pp. 12-13.)

85.     Deny.  Even without expressing a threat in precise words, the tweets and gun video can reasonably be interpreted as a threat of violence.  (See Dauber Dep. [Motion Exhibit 7] pp. 26-27, 34; Motion Exhibit 17, file "Spero video copy"'; Plaintiff's Dep. [Motion Exhibit 3] pp. 76-79; Motion Exhibit 24.)

86.     Admit.

87.     Admit.

88.     Admit.

89.     Admit.

90.     Admit.

91.     Admit.

92.     Admit.

93.     Admit.

94.     Admit that the K-12 leadership council meeting was scheduled from 8:30 a.m. to 11:00 a.m., but deny that the Elementary Leadership meeting for grades K-5 ran from 11:15 to 12:30 p.m.  The K-12 leadership council meeting ran long that day and was not completed until after Defendant Penna, Ms. Caddick, and Mr. Kasson left the meeting due to Officer Talbut's phone call.  (Ahearn Dep. [Motion Exhibit 12] pp. 117-118; Caddick Dep. [Motion Exhibit 9] p. 56; Penna Dep. [Motion Exhibit 11] p. 170.)

95.     Admit.

96.     Admit.

97.     Admit.

98.     Admit.

99.     Admit.

100.    Admit.

101.    Admit.

102.    Admit.

103.    Admit.

104.    Admit.

105.    Admit.

106.    Admit.

107.    Admit.

108.    Admit.

109.    Admit.

110.    Deny.  The record evidence cited (Caddick Dep. 82:13-16 and 83:20-22) does not establish that Mr. Spero explained where Plaintiff was.

111.    Deny.  The record evidence cited by Plaintiffs (Payne Exhibit D) does not state the reasons Defendant Penna was suspending Plaintiff; it does contain the following references, inter alia:  "Snapchat & Twitter V sent are viral" "Video clip w/weapon, female in bedroom, loading a weapon"; "Enormous disruption"; "Call from State Police"; "Getting bigger by moment"; "Filtering in our school"; "Students are concerned"; "Put out a video loading gun"; "Stress the dangers of displaying."

112.    Admit.

113.    Deny.  The record evidence cited directly contradicts the matters asserted in this paragraph.

114.    Admit.

115.    Admit.

116.    Admit.

117.    Deny that the record evidence cited (Payne Exhibit JJJ) establishes or supports the matter asserted.

118.    Admit.

119.    Admit.

120.    Admit.

121.    Admit.

122.    Admit.

123.   Admit.

124.   Admit.

125.   Admit.

126.   Admit.

127.   Admit.

128.   Deny that the record evidence cited (Talbut Dep. 46:16-18) supports the matters asserted.

129.   Admit.

130.   Admit.

131.   Admit.

132.   Admit.

133.   Admit.

134.   Admit.

135.   Admit.

136.   Admit.

137.   Deny.  The record evidence cited – Defendant Penna's testimony that the meeting was "probably" a wrap-up meeting, at Penna Dep. 219:19 – does not establish that he called it a wrapup meeting, or that any other administrator referred to it in that manner.

138.   Admit.

139.   Admit.

140.   Deny.  The record evidence cited (Caddick Dep 37:7-14) does not establish, or even suggest, that during lockdown drills, the District actually wants students to believe there is an active shooter in the school.

141.    Admit.

142.    Admit.

143.    Admit.

144.    Admit.

145.    Admit.

146.    Deny.  The cited record evidence does not establish that the English class in question usually involved discussions about V.S. or his posts.  (Dauber Dep. pp. 22-23.)

147.    Deny that the rumors that V.S. might do something involving violence at school were "false."  The cited record evidence does not establish V.S. did not plan to do something involving violence at school, and even if he had no specific plan of violence, it would not make a rumor that he "might" do something violent false.  (See Dauber Dep. p. 35.)

148.    Deny.  The record evidence cited (Ahearn Dep. 137:16-18) does not establish that the District actually uses the text message system to send alerts to notify parents and students of "any" event or occurrence; it merely states that it *can* be used to send alerts of any event or occurrence.

149.    Admit.

150.    Admit.

151.    Admit no posting was made on the District website stating V.S.'s social media postings posed no threat; deny that the record evidence cited (Ahearn Dep. 138:17-19) establishes that V.S.'s social media postings in fact posed no threat.

152.    Admit.

153.    Admit.

154.    Deny.  Plaintiff was arrested prior to turning eighteen years of age, which is relevant to his claims because it supports Defendants' defenses to the extent it is evidence corroborating that Plaintiff was prone to violent and/or intimidating conduct.  (Payne Exhibit GG pp. 16-18; Payne Exhibit HH pp. 1-24.)

155.    Deny.  Prior to issuing his tweets claiming racism and the gun video, Plaintiff uttered the names of Ms. Dyer's street and husband, and possibly her address number, while glaring at her, which may reasonably be interpreted as an implied threat.  (Dyer Dep. [Motion Exhibit 6] pp. 64-65; Dyer Aff. ⁋⁋ 4-5.)

156.    Admit.

157.    Admit.

158.    Deny that the record evidence cited (Payne Exhibit DDD) shows there were only twenty-one entries in Plaintiff's disciplinary history from January 16, 2014 through November 21, 2016, as the exhibit is missing the first page of the disciplinary history which contained five entries starting January 16, 2014 (compare Motion Exhibit 16), and the remainder of the disciplinary history (Payne Exhibit DDD) demonstrates there were twenty additional entries between those selected dates (counting two on December 3, 2015, three on January 6, 2016, and two on January 22, 2016), for a total of twenty-five, which include one for throwing paper balls at another student, one for cutting/skipping class, one for being truant and calling in imitating his father to excuse his absence, one for truancy and lying about it, one for skipping class, one for leaving class without permission and lying about it and being rude to the inquiring teacher, one for pushing a student into a stall door in the restroom and playing aggressively in physical education, one relating to accusations of theft from a student's vehicle and repeatedly lying during the investigation, one for multiple class absences, one for leaving class early without permission multiple times, one for

sending a threatening text to a fellow student, one for a safety violation, one for insubordination, one for skipping class, one for rudeness to a teacher and throwing a roll of paper towels in a garbage can in anger, one for being in a verbal altercation in which he allegedly pushed a student, one for four instances of truancy, one for leaving school early on three occasions, one for truancy, once for alleged theft in a locker room, one for allegedly throwing apples at a car and damaging it, one for leaving school without permission, another for truancy, another for truancy, and another for three instances of parking violations.  (See Motion Exhibit 16.)

159.    Admit.

160.    Admit.

161.    Admit.

162.    Deny that the record evidence cited (Payne Exhibit JJJ) establishes the matter asserted.

163.    Deny that the other student was unidentified.  (Payne Exhibit GG pp. 161-162.)

164.    Admit.

165.    Admit.

166.    Admit.

167.    Admit.

168.    Admit.

169.    Admit.

170.    Admit.

171.    Admit.

172.    Admit.

173.    Admit.

14

174.    Admit.

175.    Admit.

176.    Admit.

177.    Deny that the sole purpose of putting facts in the letters is to state the reasons for the suspension, as facts may be included simply for completeness in terms of context. (Penna Dep. [Motion Exhibit 11] pp. 180-181.)

178.    Admit.

179.    Admit.

180.    Admit.

181.    Admit.

182.    Admit.

183.    Admit.

184.    Admit.

185.    Deny that the cited record evidence (Payne Exhibit TT) establishes the matter asserted.  Further, noting that the citation is evidently a typographical error, and the intended citation was to Payne Exhibit OO, deny that the correct citation would be to record evidence that establishes the matter asserted, inasmuch as it is inadmissible hearsay.

186.    Deny that the cited record evidence (Payne Exhibit OO) establishes when the first news story was released.

187.    Deny that the cited record evidence (Payne Exhibit NN) or the previously cited record evidence (Payne Exhibit OO) establishes that the initial news coverage was on December 18, 2016.

188.   Deny that the record evidence cited (Payne Exhibit NN) shows that all the e-mails concerned Plaintiff's suspension.

189.   Deny.  (See Payne Exhibit NN p. VS953.)

190.   Admit.

191.   Admit.

192.   Deny that Defendant Ahearn relies solely on the information set forth in the initial suspension letter when he decides whether and for how long to continue an out-of-school suspension beyond the initial five days, as he relies on the testimony, evidence, and recommendation of the hearing officer generated in and as a result of a formal superintendent's hearing for that purpose; but admit that he relies solely on that information to decide whether or not to conduct a superintendent's hearing.  (Payne Exhibit U pp. 34-36; Ahearn Aff. ⁋ 5.)

193.   Admit.

194.   Admit.

195.   Admit.

196.   Deny.  The notice claimed Plaintiff engaged in "harassment" based on the tweets and the gun video.  (Motion Exhibit 29.)

197.   Admit.

198.   Admit.

199.   Admit.

200.   Admit.

201.   Admit.

202.   Admit.

203.   Admit.

16

204.    Admit.

205.    Admit.

206.    Admit.

207.    Admit.

208.    Admit.

209.    Admit.

210.    Admit.

211.    Deny.  Even without expressing a threat in precise words, the tweets and gun video can reasonably be interpreted as a threat of violence.  (See Dauber Dep. [Motion Exhibit 7] pp. 26-27, 34; Motion Exhibit 17, file "Spero video copy"'; Plaintiff's Dep. [Motion Exhibit 3] pp. 76-79; Motion Exhibit 24.)

212.    Deny.  The record evidence cited (Payne Exhibit MM p. 12) defines harassment as "5.  Harassment, which includes a sufficiently severe action or a persistent, pervasive pattern of actions or statements directed at an identifiable individual or group which are intended to be or which a reasonable person would perceive as ridiculing or demeaning."

213.    Deny.   Defendant Ahearn did not impose any suspension based on Plaintiff disregarding any instruction not to speak about his previous suspension, nor did he increase the length of the suspension based on any such issue.  (Ahearn Reply Aff. ¶¶ 3-6.)

214.    Admit.

215.    Admit that Defendant Ahearn erroneously stated in an affidavit that the photos of other students were not presented in Plaintiff's superintendent's hearing, but deny that he testified to that effect otherwise.  He admitted at deposition that his affidavit was in error in that respect

and that the photos had in fact been presented at the superintendent's hearing.  (Ahearn Dep. pp. 230-234.)

216.    Admit.

217.    Deny that Defendant Ahearn always imposes additional punishment after reviewng a recommendation of a hearing officer.  The cited record evidence shows only that in the cases to date that he remembers, he has imposed additional punishment.  (Payne Exhibit U p. 78:11-15.)

218.    Deny that the record evidence cited (Payne Exhibit U p. 205:10-22) establishes that Plaintiff was suspended for summer school in 2018.

219.    Admit.

220.    Admit.

221.    Deny.  Defendant Ahearn's decision to suspend Plaintiff was based on the substantial disruption caused by his tweets and the gun video.  (Payne Exhibit U p. 124.)  Conduct for which Plaintiff was previously disciplined, including calling Ms. Dyer a "fucking racist" and intimidating her, played a role in the decision as to the *length* of the continued suspension.  (Payne Exhibit U pp. 206-207.)

222.    Admit.

223.    Deny that the fact that the topic of the tweets was racism was one of the reasons Defendant Ahearn suspended Plaintiff.  (Payne Exhibit U p. 285.)

224.    Deny.  The cited record evidence is that Defendant Ahearn believed that if the tweets had the same tone but were on a subject other than racism, the *disruption they and the gun video caused at the District* would not have risen to the same level.  (Payne Exhibit U pp. 124-125, 286-288, and errata at p. 314.)

225.    Admit.

226.    Admit.

227.    Admit.

228.    Deny that Plaintiff alleged all students of color were seated together in the back of the classroom.  Plaintiff said only that "some" students of color were seated in the back of the classroom.  (Caddick Dep. [Motion Exhibit 9] pp. 155-156.)  Admit that two students in the class said all students of color were seated in the back of the classroom.

229.    Admit.

230.    Deny that Defendant Ahearn took the gas station video into consideration in deciding whether to continue Plaintiff's suspension, but admit he took the gas station video into consideration when deciding the length of the continued suspension.  (Ahearn Dep. [Motion Exhibit 12] pp. 206-208; 210-211.)

231.    Admit.

232.    Admit.

233.    Admit.

234.    Admit.

235.    Admit.

236.    Admit.

237.    Admit.

238.    Admit.

239.    Admit.

240.    Admit.

Dated: June 24, 2019
          East Syracuse, New York

Respectfully submitted,

The Law Firm of Frank W. Miller

**s/Charles C. Spagnoli, Esq.**
**Bar Roll No.:  507694**
*Attorneys for Defendants*
Office and Post Office Address:
6575 Kirkville Road
East Syracuse, New York  13057
Telephone:  315-234-9900
Facsimile:  315-234-9908
cspagnoli@fwmillerlawfirm.com