UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA SPERO, as Natural Mother of V.S., an Infant,

                        Plaintiff,

v.                                         3:17-CV-0007
                                         (GTS/ML)

VESTAL CENT. SCH. DIST.; VESTAL CENT. SCH.
DIST. BD. OF EDUC.; JEFFREY AHEARN; and
ALBERT A. PENNA,

                        Defendants.

_____

APPEARANCES:                        OF COUNSEL:

LEGAL SERVICES OF CENTRAL      WILLA S. PAYNE, ESQ.
NEW YORK, INC.                      JOSHUA T. COTTER, ESQ.
  Counsel for Plaintiff              SUSAN M. YOUNG, ESQ.
189 Main Street, Suite 301
Oneonta, NY 13280

OFFICE OF FRANK W. MILLER       FRANK W. MILLER, ESQ.
  Counsel for Defendants            CHARLES C. SPAGNOLI, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this civil rights action filed by Debra Spero as the

natural mother of the infant V.S.[1] ("Plaintiff") against the Vestal Central School District, two of

its employees and its Board of Education ("Defendants"), is Defendants' motion for summary

judgment, and Plaintiff's cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

_____

[1]     During the pendency of this action, V.S. has reached the age of majority and has joined as a co-Plaintiff in this action. However, out of an abundance of caution, the Court will continue to use initials when referring to V.S.

(Dkt. No. 101-45; Dkt. No. 104-65.)  Plaintiff also moves for a permanent injunction that would

require Defendants to expunge all mention of V.S.'s suspension from the permanent record.  For

the reasons set forth below, Defendants motion for summary judgment is granted in part and

denied in part, Plaintiff's cross-motion for summary judgment is denied, and Plaintiff's motion

for a permanent injunction is denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that Defendants

violated V.S.'s rights under 42 U.S.C. § 1983 by (1) retaliating against him for exercising his

First Amendment right to freedom of speech, and (2) imposing an excessive punishment for his

constitutionally protected speech in violation of his rights under the Fourteenth Amendment of

the U.S. Constitution. (*See generally* Dkt. No. 26 [Plf.'s Am. Compl.].)[2]  Familiarity with the

factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this

Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

### B.      Undisputed Material Facts[3]

Unless otherwise noted, the following facts were asserted and supported with accurate

citations by the parties in their Statement of Material Facts and expressly admitted, or denied

---

[2]      The Court notes that Plaintiff originally included multiple race discrimination
causes of action in the Complaint; however, Plaintiff did not assert a racial discrimination cause
of action in the Amended Complaint. (Dkt. No. 2; Dkt. No. 26.)

[3]      The Court finds that it is appropriate under the circumstances to combine the
parties' Statements of Material Facts given the overlapping nature of many of the factual
assertions contained therein.  In response to an argument that a party is not entitled to summary
judgment based on facts asserted in an opposing party's Statement of Material Facts, the Court
notes that, when a party moves for summary judgment, it is possible for summary judgment to be
entered *against* that party.  Fed. R. Civ. P. 56(f)(1).

without appropriate record citations, in response thereto. (*Compare* Dkt. No.101-44 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 104-66 [Plf.'s Rule 7.1 Resp.]; *compare* Dkt. No. 104-67 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 107-6 [Defs.' Rule 7.1 Resp.)

1.      Defendant Vestal Central School District ("the District") is a public school district organized and existing under the laws of the State of New York, and a recipient of federal aid.

2.      V.S. was, at the time of the incidents relevant to Plaintiff's claims, a senior student of the District.

3.      Defendant Jeffrey Ahearn is the Superintendent of Schools of the Vestal Central School District.

4.      Defendant Albert Penna was, at the time of the incidents relevant to Plaintiff's claims, the building principal of Vestal High School.

5.      In or about November of 2016, V.S. was a student in a mathematics class taught by Katharine Dyer.

6.      On November 22, 2016, an incident occurred in Ms. Dyer's mathematics class in which V.S. called Ms. Dyer a "fucking racist," and was thereafter sent to the principal's office by Ms. Dyer.

7.      V.S. was placed on senior probation as a disciplinary penalty for the November 22 incident in Ms. Dyer's mathematics class.

8.      More specifically, on or about December 2, 2016, V.S. was suspended from school for five (5) days based on allegations that he engaged in behavior designed to intimidate

Ms. Dyer: reciting her address and her husband's first and middle names aloud in her classroom without preamble or reason to voice that information.[4]

9.      Between December 2 and 5, 2016, V.S. made several posts to the social media site Twitter ("Tweets") alleging that his suspension was the subject of racism.

10.     Other students at Vestal High School received and viewed V.S.'s "Tweets," and V.S. was aware that other students in the school were receiving and viewing his "Tweets."

11.     On December 7, 2016, two days after V.S.'s last "Tweet" alleging racism in Vestal High School, V.S. posted a video to the social media site Snapchat showing a woman handling a firearm.

12.     V.S.'s Snapchat post was captioned "Guidette with a strap."

13.     V.S.'s Snapchat post was viewed by other students of Vestal High School, and V.S. was aware that those other students would receive and view his Snapchat post.

14.     On December 8, 2016, two students brought V.S.'s social media posts to the attention of the administration.

15.     District employees received at least three phone calls regarding V.S.'s Snapchat post, including a call from a State Police Captain whose daughter attends Vestal High School.

16.     On December 8, 2016, the school resource officer for Vestal High School visited V.S.'s home to investigate the gun.

17.     On December 8, 2016, high school administers left a meeting to respond to

_____

[4]      The Court acknowledges that Plaintiff does not admit that V.S. engaged in the alleged behavior.  However, the above-stated fact does not assert that V.S. engaged in the alleged behavior, only that the suspension was based on the allegations.

concerns about the atmosphere created in Vestal High School by V.S.'s Snapchat and Twitter posts.[5]

18. The District canceled a state-mandated lockdown drill that had been scheduled to occur on December 9, 2016, due to the concerns about the atmosphere created in Vestal High School by V.S.'s Snapchat and Twitter posts.

19. On December 8, 2016, V.S. was suspended from school for five (5) additional days and informed that the reason for the additional suspension was for engaging in disruptive, insubordinate conduct; specifically, V.S.'s social media posts that caused the disruption at Vestal High School.

20. V.S. and his family were provided notice of a hearing pursuant to New York Education Law § 3214, to commence on December 20, 2016, to determine whether a suspension longer than five days should be imposed upon V.S. for engaging in disruptive, insubordinate conduct due to the disruption in Vestal High School caused by his social media posts.

21. V.S.'s suspension hearing was held over the course of four days on December 20, 2016, and January 25, 30, and 31, 2017, before Hearing Officer Michael A. Sherwood.

22. During the pendency of the hearing, V.S. returned to school, and remained in school from January 5, 2017, to February 7, 2017; during this time, V.S. demonstrated a marked improvement in his academic performance.

23. Following a hearing, hearing officer Sherwood found V.S. guilty of violating the

---

[5] The Court notes that Plaintiff denies that Defendants Ahearn and Penna were in a meeting because the meeting was scheduled to end at 11:15 a.m., and the school resource officer contacted Defendants at 11:20 a.m. (Dkt. No. 104-66, ¶111.) However, Plaintiff lacks personal knowledge as to when the meeting concluded. Moreover, the fact asserted in Plaintiff's denial is not material as to whether Vestal High School administrators left a meeting early.

Vestal Central School's student code of conduct, and issued a recommendation (also issued by counsel for the school district) that V.S. be suspended from school for the remainder of the 2016-17 school year and the entire 2017-18 school year, as a penalty for his conduct.

24.     Superintendent of Schools Jeffrey Ahearn accepted Hearing Officer Sherwood's findings that V.S. violated the Vestal Central Schools Code of Conduct, and imposed a penalty of suspension from school for the remainder of the 2016-2017 school year and the entire 2017-2018 school year.

25.     On March 13, 2017, V.S. appealed his suspension to the Vestal Central School District Board of Education, which voted to affirm the suspension.

26.     V.S. filed an appeal to the New York State Commissioner of Education pursuant to New York Education Law § 310 seeking expungement of his suspension and a stay to immediately reinstate V.S. in school.

27.     On April 21, 2017, V.S.'s request to the Commissioner of Education to stay implementation of the penalty was denied.

28.     On August 29, 2017, V.S.'s appeal was dismissed by the Commissioner of Education without examination of the merits of his claims, and with leave to re-file based upon the outcome of the within proceedings.

29.     Hearing Officer Sherwood's disciplinary recommendations regarding other Vetsal High School students concerned conduct including the following: writing out the chemical formula for a bomb, engaging in racially discriminating conduct, and retaliating against a student for reporting said conduct; assaulting a fellow student in a manner that could have caused permanent physical injury and sending threatening messages to the student's girlfriend;

threatening another student by saying "wait until I become a serial killer, you'll be sorry," "if you touch me I will stab you in the throat with my pencil," "I'm going to . . . kill all of you and your family," among other explicit threats; and posting a video discussing blowing up the school, posting harassing remarks and comments via social media and text messages in regard to students, having a history of cyber-bullying other students, among other disruptive conduct.

30.     Superintendent Ahearn has accepted Hearing Officer Sherwood's disciplinary recommendations regarding other Vestal High School students for out-of-school suspensions of the following durations: eight months, an academic year, twelve months, and sixteen months.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statements and Rule 7.1 Responses, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id*.)

### C.     Parties' Briefing on Defendants' and Plaintiff's Motions

Generally, in support of their motion for summary judgment, Defendants argue as follows: (1) Defendants reasonably foresaw a substantial disruption in the educational environment at Vestal High School due to V.S's alleged protected speech; (2) Plaintiff's substantive due process claim is encompassed in her First Amendment claim and thus is meritless; (3) Defendants Ahearn and Penna are entitled to qualified immunity because their conduct was objectively reasonable under the clearly established law as it existed at the time of the suspension; and (4) the official-capacity claims against Defendants Ahearn and Penna are redundant because Plaintiff named the District and the Board of Education as Defendants. (*See generally* Dkt. No. 101-45 [Defs. Memo. of Law].)

Generally, in Plaintiff's response to Defendants' motion for summary judgment, she argues as follows: (1) it was not reasonably foreseeable that V.S.'s speech would create a substantial disruption, (2) V.S.'s substantive due process rights were violated because there was no rational relationship between V.S.'s speech and his suspension, (3) Defendants Ahearn and Penna are not entitled to qualified immunity as a matter of law, and (4) V.S. is entitled to a permanent injunction requiring the District to expunge all mention of V.S.'s suspension from his permanent record. (*See generally* Dkt. No. 104-65 [Plf.'s Opp'n Memo. of Law].)

Generally, in their reply, Defendants argue as follows: (1) at the very least, Plaintiff's cross-motion must be denied because there is a genuine issue of material fact as to V.S.'s mental state when making the allegedly defamatory statements; (2) Defendants have shown that Plaintiff's Tweets and Snapchat video were reasonably predicted to cause a substantial disruption; (3) the danger of substantial disruption from V.S.'s social media posts, not the posts themselves, were the "but-for" cause of V.S.'s suspension; (4) Plaintiff's argument that the length of suspension violated the First Amendment is meritless because courts cannot supersede the District's judgment once a substantial disruption can be reasonably foreseen from student speech; (5) Defendants are entitled to summary judgment on Plaintiff's substantive due process claim because the length of the suspension was rationally related V.S.'s conduct; and (6) Defendants Ahearn and Penna are entitled to qualified immunity as a matter of law because it would not be clear to Defendants Ahearn and Penna that they were violating the First Amendment under controlling law. (*See generally* Dkt. No. 107-7 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[7]

---

[6]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[7]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[8]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[9]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[10]

---

[8]      *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[9]      *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[10]      Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[11] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.  ANALYSIS

### A.  Whether Plaintiff's First Amendment Claim Should Be Dismissed Because Defendants Reasonably Foresaw a Substantial Disruption at Vestal High School

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law.  (Dkt. No. 101-45, at 13-23; Dkt. No. 107-7, at 8-16.)  To those reasons, the Court adds only the following two points.

specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[11]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

First, the Court finds that there is no genuine dispute of material fact that there was a reasonably foreseeable risk that V.S.'s social media posts would come to the attention of school officials. V.S. made several posts over multiple days on Twitter and Snapchat, where many of his Vestal High School classmates follow him and thus have the ability to view his posts. *See Bradford v. Norwhich City Sch. Dist.*, 54 F. Supp. 3d 177, 185-86 (N.D.N.Y. 2014) (Suddaby, J.) (holding that there was a foreseeable risk that the speech would come to the attention of school officials when a text-message conversation was forwarded). Indeed, several students from Vestal High School actually saw V.S.'s social media posts and brought them to the attention of school officials. As a result, the record clearly indicates that it was reasonably foreseeable that V.S.'s posts would come to the attention of school officials.

Second, the Court finds that there was a reasonably foreseeable risk that V.S.'s social media posts would substantially disrupt the work and discipline of the school. Although Plaintiff argues that it was not reasonably foreseeable that V.S.'s speech would create a substantial disruption (Dkt. No. 104-65, at 13-26), Plaintiff's argument ignores the *Tinker* standard for resolving conflicts between student speech and discipline. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503 (1969). Under *Tinker*, otherwise protected speech can support the imposition of student discipline when there are facts that "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." 393 U.S. at 514. Under this standard, "the question is 'whether school officials might reasonably portend disruption from the student expression at issue.'" *Cuff v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 113 (2d Cir. 2012) (quoting *Doninger v. Niehoff*, 527 F.3d 41, 51 [2d Cir. 2008]). A threat of violence, even if remote, satisfies the *Tinker* substantial-disruption test. *Wisniewski v.*

*Bd. of Educ. of Weedsport Cent. Sch. Dist.*, 494 F.3d 34, 38 (2d Cir. 2007). Accordingly, Defendants need not demonstrate that substantial disruption was inevitable. *Cuff*, 677 F.3d at 113.

Here, based on the current record, no reasonable fact finder could conclude that the school officials unreasonably anticipated a substantial disruption. V.S.'s Snapchat post depicted an unknown woman handling a gun after V.S. had recently been disciplined and posted several Tweets criticizing the school. Defendants have a duty to provide a safe and stable learning environment that is free of distraction and fear. *Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 434 (N.D.N.Y. 2005) (Kahn, J.). Moreover, several students approached multiple school officials expressing concern for their safety after seeing V.S.'s Snapchat video and Tweets,[12] and the school received at least three phone calls from parents concerning V.S.'s social media posts. Based on these facts (coupled with the school administrators' general knowledge of V.S.'s prior disciplinary history, V.S.'s Tweets identifying his perceived social injustice in the District, and V.S.'s recent suspension for allegedly intimidating Ms. Deyer), no reasonable fact-finder could conclude that school administrators' anticipation of a substantial disruption was unreasonable.

For these reasons, Plaintiff's First Amendment claim is dismissed.

### B. Whether Plaintiff's Substantive Due Process Claim Should Be Dismissed Because There Is No Genuine Issue of Material Fact

After carefully considering the matter, the Court answers this question in the negative for the reasons stated below.

---

[12] V.S.'s Tweets included statements such as the following: "Vestal High School is corrupt and unfair to its colored students"; "End racism within our schools, how are you supposed to teach the young minds while (yours) is stuck in such an evil way #vestalhighschool"; and "We are all equal, because of the pigmentation of my skin means I'm a danger to the school? You are racist, face it you are a horrible being." (Dkt. No. 101-25, at 1-4).

13

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). To establish a substantive due process violation, a plaintiff must first identify a valid liberty or property interest. *Goodspeed Airport v. E. Haddam Land Trust, Inc.*, 166 F. App'x. 506, 508 (2d Cir. 2006); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 525 (S.D.N.Y. 2013); *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d. 558, 579 (E.D.N.Y. 2011). Under the Fourteenth Amendment, individuals have a valid property interest in their right to a public education. *Biswas*, 973 F. Supp. 2d. at 525; *Goss v. Lopez*, 419 U.S. 565, 573 (1975). Courts have also determined that individual students have a liberty interest in not being stigmatized by suspension. *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 393-94 (5th Cir. 2011) (citing *Goss*, 419 at 574 ["The Due Process Clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied."] [quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)]). Accordingly, the Court finds that the Fourteenth Amendment protects citizens against the State itself and all of its creatures—Boards of Education are not excepted.[13] *Swindle*, 655 F.3d at 394 (citing *Goss*, 419 U.S. at 574).

---

[13]    The Court notes that Plaintiff's substantive due process claim does not fall under any other provision of the Constitution. Courts have been reluctant to expand the concept of substantive due process "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of 'substantive due process." *Conn v .Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted). Although Defendants argue that Plaintiff's claim falls under the First Amendment, the Constitution does not provide an explicit constitutional protection for the length of a student's suspension.

A party must demonstrate two things to successfully claim a deprivation of a property interest in violation of the Substantive Due Process Clause: (1) government action, and (2) that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1988). Specifically, a plaintiff must show that the challenged government decision "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989); *see also Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (explaining that substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised."). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005); *Horton v. Westling*, 765 F. App'x 531, 533-34 (2d Cir. 2019). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 127 (E.D.N.Y. 2005) (quoting *Lewis*, 523 U.S. at 840).

"Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968). "A school administration's decision to suspend a student will provide a basis for a substantive due process claim only in the very 'rare case' when there is 'no rational relationship between the punishment and the offense.'" *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 486 (E.D.N.Y. 2009), *aff'd*, 623 F.3d 71 (2d Cir. 2010) (quoting *Rosa R.*, 889 F.3d at 439); *see also Bd. of Educ. v. McCluskey*, 458

15

U.S. 966, 970 (1982) (finding no due process violation where a school board's interpretation of

its rules is reasonable).  As U.S. District Judge Mae D'Agostino of this Court has explained,

> It is not the role of the federal courts to set aside decisions of school
> administrators which the court may view as lacking a basis in wisdom
> or compassion . . . . § 1983 does not extend the right to relitigate in
> federal court evidentiary questions arising in school disciplinary
> proceedings or the proper construction of school regulations.

*Horton v. Bd. of Educ. of Sherburne-Earlville Cent. Sch. Dist.*, 17-CV-0045, 2017 WL 1437186,

at *5-6 (N.D.N.Y. Apr. 21, 2017) (D'Agostino, J.) (quoting *Wood v. Strickland*, 420 U.S. 308,

326 [1975]).  However, a school board's interpretation of its rules can be so extreme as to violate

a student's due process rights.  *McCluskey*, 458 U.S. at 970.

## 1.      Decision to Suspend V.S.

The Court begins its analysis by finding that Defendants did not violate V.S.'s substantive

due process rights when an additional suspension was imposed after V.S. had served two prior

five-day suspensions in December 2016.  As previously discussed in Part III.A. of this Decision

and Order, school officials have significant authority to sanction student speech.  *Wisniewski*, 494

F.3d at 38; *DeFabio*, 623 F.3d at 82.  Moreover, courts have repeatedly found that suspensions

from school are appropriate sanctions.  *DeFabio*, 658 F. Supp. 2d at 486; *Rosa R.*, 889 F.2d at

439; *McCluskey*, 458 U.S. at 970; *Bulter v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197,

1200-01 (10th Cir. 2003).

Here, Defendants decided to issue a suspension after conducting a fact-finding hearing in

which V.S. had the opportunity to confront the witnesses against him.  At the hearing, counsel

for the District recommended an additional suspension because V.S. "refused to accept

consequences," "up[ped] the ante by going out into social media and . . . harassing and defaming

the teacher and the school district with intent to harm . . ." in addition to having an extensive disciplinary history and "pattern of insubordination and retaliation." (Dkt. No. 104-6, at 191.) V.S. served several in-school suspensions, as well as two out-of-school suspensions, prior to the suspension at issue. Therefore, it was rational for the school district to issue an additional out-of-school suspension, particularly in light of the fact that V.S.'s conduct was seemingly escalating in December 2016.

### 2. Length of Suspension

Turning to the subject of the length of V.S.'s suspension, Defendants argue that an eighteen-month out-of-school suspension cannot be considered "egregious" for the purpose of a substantive due process claim because even excessive corporal punishment does not violate a student's substantive due process rights.[14] (Dkt. No. 107-7, at 26.) However, although the Court has found that Defendants did not violate V.S.'s substantive due process rights when imposing an additional out-of-school suspension, the Court finds that there is a genuine dispute of material fact as to whether an eighteen-month suspension violates V.S.'s substantive due process rights.

The Supreme Court has repeatedly emphasized the significance of public education, calling it "'perhaps the most important function of state and local governments.'" *Goss*, 419 U.S. at 576 (quoting *Brown v. Bd. of Educ.*, 347 U.S. 483, 493[1954]). "Public education has also been described as 'a most vital civic institution for the preservation of a democratic system

---

[14] Defendants also argue that Plaintiff attempted to add a new claim in Plaintiff's cross-motion; however, Defendants argument is without merit. (Dkt. No. 107-7, at 25.) Plaintiff's cause of action is clearly stated in her Amended Complaint. (Dkt. No. 26, at 17.) Specifically, Plaintiff alleges that Defendant's punishment violated V.S.'s Fourteenth Amendment rights. (Dkt. No. 26, at 17.) Accordingly, the Court can consider Plaintiff's substantive due process claim because it is encompassed within her Fourteenth Amendment claim.

of government.' *Swindle*, 655 F.3d at 398 (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 230 [1963] [Brennan, J., concurring]). The Supreme Court has consistently recognized how important education is to the professional and personal development of an individual, and that global competition has increased the importance of primary and secondary education. *Swindle*, 655 F.3d at 398; *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 437 (1993) (Blackmun, J., concurring) (citing *Brown*, 347 U.S. at 493); *United States v. Lopez*, 514 U.S. 549, 621 (1995) (Breyer, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.).

"Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial . . . ." *Swindle*, 655 F.3d at 397 (quoting *Goss*, 419 U.S. at 580). "On the other hand, '[t]he difficulty is that our schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed.'" *Id.* (quoting *Goss*, 419 U.S. at 580). However, a suspension "that so isolates a student from educational opportunities that it infringes her property interest in an education, or one so long in duration that it damages one's reputation, could raise [substantive due process] issues . . . ." *Laney v. Farley*, 501 F.3d 577, 584 (6th Cir. 2007). Accordingly, "[a] suspension of sufficient length or consequence can implicate the Due Process Clause." *Laney*, 501 F.3d at 584.

In *DeFabio*, a rumor spread throughout East Hampton High School that then-tenth grader DeFabio commented "one down, forty thousand to go," after learning that a Hispanic student was killed in a motorcycle accident. 623 F.3d at 74. The school sent DeFabio home for his own protection after students became openly hostile to DeFabio, threatening to kill him and bomb his

home. *Id.* The Second Circuit held that the school did not violate DeFabio's substantive due process rights when it subsequently decided to suspend DeFabio for the remainder of the school year. *Id.* at 82. Specifically, the Second Circuit found that the school's decision to suspend DeFabio for the remainder of the school year was rational because of the nature of the statement, the number and divisive nature of the students affected by the statement, the concerns of DeFabio's safety, as well as DeFabio's failure to adduce evidence of bad faith. *Id.*

Additionally, in *D.F. ex rel. Finkle*, a sixth grader was suspended for thirty days for writing and reading aloud to the class his story in which named students were murdered and sexually assaulted. 386 F. Supp. 2d at 123-24. The district court found that the school had the discretion to suspend the student for thirty days because the student's conduct warranted serious disciplinary action. *Id.* at 127-28; *see also Binder v. Cold Spring Harbor Cent. Sch. Dist.*, 09-CV-4181, 2010 WL 3257708, at *7 (E.D.N.Y. July 19, 2010) (explaining that the school's decision to impose an approximate ten-month suspension did not violate a student's substantive due process rights because the student possessed and intended to distribute a large amount of marijuana and the student showed no remorse or responsibility for his actions). The court reasoned that a thirty-day suspension is not so egregious to warrant judicial intervention as a student may miss thirty days of school as the result of illness. *D.F. ex rel. Finkle*, 386 F. Supp. 2d at 128.

In this case, although Defendants provided several reasons to impose an out of school suspension, a question of fact remains as to whether the length of that suspension was arbitrary, conscious shocking, or motivated by bad faith. The hearing officer found that V.S. created "threatening social media posts (including the video of his sister unloading a gun)" "[i]n

retaliation" for his suspension. (Dkt. No. 101-33, at 5.) Defendants recommended and

ultimately imposed an eighteen-month suspension because V.S. "not only refused to accept [the]

consequences [of his actions] but really up[ped] the ante by . . . harassing and defaming the

teacher and the school district with intent to harm . . . ."[15] (Dkt. No. 104-6, at 191.) In support of

their position, Defendants argue that a "formula" was used when determining the length of an

out-of-school suspension. (Dkt. No. 107-7, at 22.) However, Defendants fail to provide

evidence of this formula or how V.S.'s eighteen-month suspension was calculated. Instead,

Defendants compare V.S.'s conduct to those of other Vestal High School students who were

issued lengthy suspensions. (Dkt. No. 107-7, at 22.)

Defendants liken V.S.'s conduct to that of L.L.,[16] a then-freshman who was suspended for

sixteen months for the following: posting a video in which she discussed blowing up the school,

insulting named students or employees in the same video, repeatedly posting harassing remarks

via text messages and social media, as well as threatening to throw an object at a student in a

classroom. (Dkt. No. 104-52, at 7-9.) Defendants also compare V.S.'s conduct to then-

sophomore H.H.,[17] who was suspended for a full calendar year for threatening other students and

---

[15]    Defendant Ahearn articulated several additional reasons to support the length of V.S.'s suspension during his deposition, including the following: V.S.'s actions in the classroom, V.S.'s disciplinary history and grades, as well as the disruption V.S. caused his classmates and the school itself, among others. (Dkt. No. 101-44, at ¶197; Dkt. No. 101-13, at 20-25; Dkt. No. 104-22, at 207-09 [Def. Ahearn Deposition].) Furthermore, Defendant Ahearn revealed during his deposition that he had also taken into consideration an off-campus incident when determining the length of the suspension. (Dkt. No. 107-6, at ¶ 230; Dkt. No. 104-22, at 209, 211-12.)

[16]    Although L.L. does not reflect the student's actual initials, Plaintiff's exhibit of other students' disciplinary history was marked "L.L." The Court will therefore use the letters "L.L." to refer to the student in the interests of protecting the student's anonymity.

[17]    For the reasons stated above in note 16 of this Decision and Order, the Court will refer to the student as "H.H."

employees. Specifically, H.H. stated, "[Y]ou just wait until I become a serial killer, you'll be sorry," "[i]f you touch me I will stab you in the throat with my pencil," "I'm gonna . . . kill all of you and your family. You can watch me kill your family," and "[i]f not today than the next day, I'm gonna come to school with a twelve-gauge and put it in your . . . head." (Dkt. No. 104-52, at 18.) H.H. had to be restrained by six staff members during the incident. (Dkt. No. 104-52, at 20.)

There are several differences between V.S.'s conduct and the other student's conduct. First, L.L. and H.H. both issued explicit verbal threats of future violence against individually named students. L.L. also verbally threatened to harm the school itself, while H.H. directed additional threats to school employees. V.S., however, did not speak throughout the approximate seven-second video, or issue any verbal threats directed to at school or any individual students. Moreover, the video's caption "Guidette with a strap" is not threatening on its face. Although Defendants argue that V.S. previously engaged in threatening behavior by reciting the teacher's address and name of her spouse approximately a week before V.S. posted the video, there is a genuine dispute of material fact as to whether Plaintiff engaged in this behavior.[18]

Additionally, V.S. was not similarly situated to either L.L. or H.H. when the school imposed the eighteen-month suspension. L.L. was a freshman and H.H. was a sophomore at the time the school imposed their suspensions. In this case, V.S. was a senior who was on pace to graduate within the next six months. Both L.L.'s and H.H.'s suspensions were, in part, motivated to protect the other students who would have repeatedly interacted with L.L. and H.H.

---

[18]     As indicated above in Part I.B. of this Decision and Order, Plaintiff contests engaging in this action.

over the next year to year-and-a-half.  In fact, H.H.'s hearing officer specifically cited the school's duty to maintain a safe and orderly environment in his recommendation to Defendant Ahearn.  (Dkt. No. 104-52, at 20.)  Meanwhile, V.S. returned to school on January 5, 2017, and there were seemingly no issues or disruption caused by V.S.'s presence once he returned to school.  V.S. even demonstrated a significant improvement in both his classes and attitude until his eighteen-month suspension was imposed on February 7, 2017.  (Dkt. No. 104-47; Dkt. No. 104-67 ¶¶ 24-27, 199).  Furthermore, both L.L. and H.H. were provided alternate forms of education because each student was of the compulsory-school-attendance age in New York State. V.S., on the other hand, was over the compulsory school attendance age and was not provided an alternate form of education.  It was only after Plaintiff filed this lawsuit that V.S. was offered the option of attending summer classes in order to satisfy his graduation requirements.

Defendants further compare V.S.'s disciplinary history with that of L.L., arguing that the only reason V.S.'s suspension was two months longer than that of L.L. was because V.S.'s conduct occurred earlier in the school year.  L.L.'s disciplinary history contained several entries, including multiple instances of cyber-bullying that were referred to juvenile law enforcement. (Dkt. No. 104-54 at 8.)  Vestal High School also suspended L.L. for three days because of "inappropriate posts on social media."  (Dkt. No. 104-54 at 8.)  Here, V.S.'s full disciplinary record has been submitted to the Court. (Dkt. No. 101-17.)  Although there were approximately twenty-three separate entries in V.S.'s record, he was not punished for each incident related to those entries.  V.S.'s punishments ranged from verbal warnings and documenting the incident in his file to in-school suspensions and probation for senior activities.  (Dkt. No. 101-17.)  Unlike L.L., V.S. did not have the full opportunity to prove that a short-out-of school suspension was an

inadequate punishment.  L.L. was first issued an out-of-school suspension on January 31, 2018,

while the conduct that caused L.L.'s sixteen-month suspension occurred in March 2018.

Although V.S. was first suspended on December 2, 2016, his suspension was subsequently

extended on December 8, 2016.  V.S. returned from his out-of-school suspension on January 5,

2017, with what appeared to be a changed mindset, demonstrating a marked improvement in both

his attitude and his academic performance before being suspended on February 7, 2017.  When

the totality of the circumstances are analyzed, it appears that L.L. was suspended for sixteen

months for repeating and escalating her cyber-bullying, despite the previous in-school and out-of-

school suspensions.  V.S., however, was suspended for eighteen months for conduct he had not

previously been sanctioned for prior to December 8, 2016, namely his social media posts and the

disruption caused within Vestal High School.  (Dkt. No. 101-33, at 5.)  Accordingly, there is a

genuine dispute of material fact as to whether V.S.'s eighteen-month suspension was arbitrary,

conscious shocking, or motivated by bad faith.

There is also a genuine dispute of material fact as to whether the Snapchat video V.S.

posted was "threatening."  Here, V.S. did not direct any threats to the school, school property, or

an individual student.  The "threatening" conduct was an approximate seven-second video of a

woman (V.S.'s sister) handling a gun, which was not pointed at the camera.  Specifically, the

video shows a woman pointing a handgun at a wall inside a bedroom and subsequently lowering

her arm.  No shots were fired during the video and the gun was pointed at the wall throughout the

entirety of the video, away from the camera.  The Court also notes that a gun safe is visible on

the bed.  Additionally, the caption "Guidette with a strap" does not indicate a threat to either the

school itself or individual students.  However, it is important to evaluate the totality of the

circumstances, not just the video itself.  In this case, V.S. was serving a previously imposed

suspension for allegedly intimidating a teacher when he posted the Snapchat video of a woman

handling a gun.  While on suspension, V.S. also ignored Defendants' instructions to not discuss

his suspension, posting various messages on Twitter alleging social injustice and racism at Vestal

High School.  In light of the reaction to V.S.'s social media posts, Defendants suspended V.S. for

an additional five days on December 8, 2016.[19]  When Defendant Ahearn was considering the

hearing officer's recommendation, he viewed photographs (admitted at the Superintendent's

hearing) of other Vestal High School students posting guns to social media and characterized the

photographs as "innocuous and innocent."  (Dkt. No. 104-67, at ¶ 216; Dkt. No. 107-6, at ¶ 216.)

These photographs depict students, all of whom were Caucasian, displaying or posing with guns,

and range from photographs of the firearms themselves to individuals in masks posing with rifles

and handguns.[20]  (Dkt. No. 104-15.)  Accordingly, there is also a question of fact as to whether

the video is "threatening."

Unlike *DeFabio*, V.S.'s suspension was not motivated by safety, but to punish V.S.'s past

conduct, namely his actions over social media and the substantial disruption caused to the school.

In this case, V.S. was suspended approximately two months after the video was first posted.

---

[19]     The Court notes the tragic increase in school shootings and recognizes that
Defendants must be vigilant in doing everything reasonably possible to avoid and prevent a
tragedy.  Officer Talbut, as well as two other police officers, visited V.S.'s home and determined
that there was a valid gun permit and the handgun was stored in the safe.  (Dkt. No. 101-44, at ¶¶
133, 135.)  Officer Talbut returned to the high school and reported to Defendants that the gun
depicted in the video was properly registered and located in a gun safe in which V.S. could not
access it.  (Dkt. No. 101-44, at ¶¶ 136, 140.)

[20]     The Court notes that at least two of the firearms depicted in the photograph appear
to be airsoft guns, not actual firearms. (Dkt. No. 104-15, at 2.)  The Court notes also that most of
the photographs appear to be hunting related.

During that time, V.S. returned to school for over a month and, as previously discussed, had shown significant improvement during that time. Although V.S. had an extensive disciplinary history, V.S. was not subject to an out-of-school suspension prior to December 1, 2016. It is worth noting that V.S.'s conduct at issue occurred in close proximity to other allegedly problematic conduct; however, Defendants had previously issued suspensions of eight, ten, twelve, and sixteen months to Vestal High School freshman, juniors, and sophomores for extreme conduct. (Dkt. No. 104-67, at ¶¶ 235-40.)

Although it is a close decision, the Court concludes that there is a genuine issue of material fact as to whether V.S.'s eighteen-month suspension was rationally related to his conduct, and in the interests of justice, a jury should determine the merits of Plaintiff's substantive due process claim. For these reasons, Plaintiff's claim for a substantive due process violation survives Defendant's motion for summary judgment.

**C.     Whether Defendants Ahearn and Penna Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 101-45, at 23-25; Dkt. No. 107-7, at 24-25.) The Court would only add the following point.

"Qualified immunity protects public officials from legal actions brought under 42 U.S.C. § 1983 if their behavior does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]). A school official is not immune from damages under section 1983 if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights

of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." *Wood v. Strickland*, 420 U.S. 308, 322 (1975). The relevant question is whether the state of the law gives the defendant "fair warning" that her actions against Plaintiff were unconstitutional; there is no requirement that the facts of a precedential case be "fundamentally similar" to establish that a right was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The state of the law is evaluated at the time when the defendant's actions took place, not when suit is filed. *Hope*, 536 U.S. at 741.

"A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting *Salim v. Proulx*, 93 F.3d 86, 89 [2d Cir. 1996]). Put another way, qualified immunity "applies if the official's mistake as to what the law requires is reasonable." *DC v. Valley Cent Sch. Dist.*, 09-cv-9036, 2013 WL 2181213, at *6 (S.D.N.Y. May 20, 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 205 [2001]).

In this case, Defendants Ahearn and Penna did not violate clearly established law. As previously discussed above in Part III.A. of this Decision and Order, school administrators did not violate V.S.'s First Amendment rights. Because school administrators reasonably anticipated that V.S.'s social media posts would cause a substantial disruption to the educational process, Defendants Ahearn and Penna did not violate V.S.'s First Amendment rights or other clearly established law.

Additionally, it was objectively reasonable for Defendants Ahearn and Penna to believe that further suspending V.S. would not violate his constitutional rights. Here, the District's

hearing officer recommended additional punishment for V.S.'s actions. Defendants Ahearn and

Penna acted within the confines of the school's regulations and Defendant Ahearn imposed the

hearing officer's recommended punishment. V.S. was punished only after the school board held

a hearing that complied with V.S.'s procedural due process rights. V.S. was also represented by

counsel and had the opportunity to cross-examine witnesses. Moreover, it is objectively

reasonable for Defendants Ahearn and Penna to believe that imposing an eighteen-month

suspension did not violate clearly established law. The Court has not found any Supreme Court

or Second Circuit case that forbids school officials from imposing an out-of-school suspension

for eighteen months. Accordingly, it is objectively reasonable that Defendants Ahearn and Penna

believed they were within their right to impose such a substantial punishment.

For these reasons, Plaintiff's claims against Defendant Ahearn and Defendant Penna in

their individual capacity are dismissed.

### D. Whether Plaintiff Is Entitled to a Permanent Injunction

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated below.

A plaintiff seeking a permanent injunction must satisfy a four-factor test before a district

court can use its equitable discretion to grant such relief. *eBay Inc. v. MercExchange, L.L.C.*,

547 U.S. 388, 391 (2006); *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677

(S.D.N.Y. 2015). Specifically, a plaintiff must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available
> at law, such as monetary damages, are inadequate to compensate for
> that injury; (3) that, considering the balance of hardships between the
> plaintiff and defendant, a remedy in equity is warranted; and (4) that
> the public interest would not be disserved by a permanent injunction.

*eBay*, 547 U.S. at 391; *U.S.S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 296 (2d. Cir. 2014).

In this case, Plaintiff argues that V.S. is entitled to an expungement of all mention of his suspension from the permanent record because V.S. suffered an irreparable harm from a constitutional violation. (Dkt. No. 104-65, at 25.) However, Plaintiff's argument fails to discuss, let alone provide evidence of, several factors when evaluating the propriety of a permanent injunction. Specifically, Plaintiff fails to demonstrate how legal remedies are inadequate to compensate for V.S.'s injury, why an equitable remedy is warranted, or that the public interest would not be disserved by a permanent injunction. Plaintiff merely relies on legal conclusions in an attempt to demonstrate irreparable harm.

For these reasons, Plaintiff's motion for a permanent injunction is denied.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 101) is **<u>GRANTED</u> in part and <u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 104) is **<u>DENIED</u>**, and Plaintiff's motion for a permanent injunction (Dkt. No. 104) is **<u>DENIED</u>**; and it is further

**ORDERED** that the Clerk is directed to terminate Jeffrey Ahearn and Albert A. Penna as Defendants in this action; and it is further

**ORDERED** that counsel are directed to appear on **<u>January 29, 2020 at 10:00 AM in Syracuse, NY</u>** for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that

time. Plaintiff is further directed to forward a written settlement demand to Defendants no later than January 8, 2020, and the parties are directed to engage in meaningful settlement negotiations before the conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week before the scheduled conference.

Dated: December 16, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge